Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/07/2022 09:06 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
DEREK J. ROTH, APPELLANT.
___ N.W.2d ___

Filed July 15, 2022.    No. S-21-792.

1.  **Sentences: Appeal and Error.** When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.

2.  **Judges: Words and Phrases.** A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

3.  **Appeal and Error.** Consideration of plain error occurs at the discretion of an appellate court.

4.  ____. Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.

5.  **Sentences.** In imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.

6.  ____. The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.

7.  **Sentences: Appeal and Error.** A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.

8. **Sentences.** A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime.

9. **Sentences: Appeal and Error.** An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced.

10. **Sentences: Probation and Parole.** Post-release supervision is a form of probation.

11. **Statutes: Legislature: Intent.** In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being a court's duty to discover, if possible, the Legislature's intent from the language of the statute itself.

12. ____: ____: ____. Components of a series or collection of statutes pertaining to a certain subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature so that different provisions are consistent, harmonious, and sensible.

13. **Words and Phrases.** As a general rule, the use of the word "shall" is considered to indicate a mandatory directive, inconsistent with the idea of discretion.

14. **Sentences: Appeal and Error.** The statutory provisions of Neb. Rev. Stat. §§ 29-2204.02 and 28-105 (Reissue 2016) relating to post-release supervision are mandatory, and a sentence that fails to impose post-release supervision when required is an appropriate matter for an appellate court's discretionary plain error review.

15. **Sentences.** The trial court's discretion to direct that sentences be served either concurrently or consecutively applies equally to terms of imprisonment and terms of post-release supervision.

Appeal from the District Court for Dodge County: Geoffrey C. Hall, Judge. Vacated and remanded with directions.

Daniel S. Reeker, of Kendall, Crawford & Reeker, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Freudenberg, J.

## INTRODUCTION

Following convictions of two counts of possession of a deadly weapon (not a firearm) by a prohibited person and one count of third degree domestic assault, the defendant was sentenced to 30 months' probation. His probation was later revoked, and he was sentenced to 3 years' imprisonment. In a direct appeal following the probation revocation, the defendant argues his total sentence of imprisonment was excessive. The State argues the district court plainly erred in failing to impose mandatory post-release supervision as part of the total sentence of imprisonment.

## BACKGROUND

Derek J. Roth was originally charged in Dodge County with possession of a firearm by a prohibited person, a Class ID felony, in violation of Neb. Rev. Stat. § 28-1206(1)(a) and (3)(b) (Supp. 2017); two counts of possession of a deadly weapon (not a firearm) by a prohibited person, both Class III felonies, in violation of § 28-1206(1)(a) and (3)(a); third degree domestic assault, a Class I misdemeanor, in violation of Neb. Rev. Stat. § 28-323(1)(a) (Reissue 2016); three counts of carrying a concealed weapon, all Class I misdemeanors, in violation of Neb. Rev. Stat. § 28-1202 (Reissue 2016); and violation of a protection order, a Class I misdemeanor, in violation of Neb. Rev. Stat. § 42-924 (Cum. Supp. 2018).

Pursuant to a plea agreement, Roth pled no contest to two counts of possession of a deadly weapon (not a firearm) by a prohibited person, both Class III felonies, and third degree domestic assault, a Class I misdemeanor.

The presentence investigation report (PSI) prepared for sentencing set forth the circumstances that led to Roth's original charges. On January 7, 2018, a Fremont, Nebraska, police officer was dispatched to a hotel in reference to a woman who called the 911 emergency dispatch service to report that she had been assaulted. The victim told the officer that she had been working concessions at a basketball game when Roth

arrived and wanted her to leave. The victim willingly left with him. She stated that she thought "things would be okay," since she had a protection order against Roth out of Lancaster County.

They bought alcohol and went to a hotel room. The victim told the officer that Roth began accusing her of having relationships with others and that they got into an argument. Roth told the victim she was being too loud and then grabbed her face with his hands in an attempt to keep her quiet.

The victim reported she left the room and ran to the lobby, where she called the police. Roth came to the lobby and attempted to get her to leave with him in his vehicle. The victim stated she did not go with him because she was afraid. The victim reported that she knew he usually carried a firearm with him.

Upon arrival, the police observed the injuries to the victim's face. There was swelling under both eyes and on her cheek. The victim also showed the officer defensive bruising on both her forearms, which she advised was from the day before. The victim told the officer that there was a history of domestic violence between her and Roth, which has resulted in approximately 16 calls to the Lincoln, Nebraska, Police Department.

Roth was observed leaving the hotel parking lot in a vehicle as officers arrived. Roth was ultimately stopped. A search of his vehicle revealed a set of brass knuckles, a serrated Buck knife, and a handgun.

Roth reported that he and the victim fought "'a lot'" and that the police were called on several occasions. During one such altercation, Roth indicated that the victim stabbed him as evidenced by the scars on his arms. Roth reported that he felt anger, embarrassment, and disappointment when he thinks about this offense because he "'knew it was bound to happen and was mad that [he] went around her again.'" He denied any domestic violence in other relationships he has had.

In the "LS/CMI" assessment, the PSI indicated that Roth is considered to be a high risk for reoffending. Roth scored in

the very high risk range in the alcohol/drug problems category
and in the high risk range in the family/marital and companions
categories. Roth scored in the medium risk range in the crimi-
nal history and antisocial pattern categories, low risk range in
the procriminal attitude/orientation and education/employment
categories, and very low risk range in the leisure/recreation
category.

The probation officer stated that although Roth expressed a
willingness to change, he had a history of domestic violence,
he had a history of not abiding by the terms of the protection
order, and he minimized the seriousness of the offenses. The
officer noted that Roth was willing to participate in proba-
tion and that he had never been on a term of probation in the
past; however, the probation officer noted that the assessment
suggested there is a high risk to the community for continued
victimization.

Roth was sentenced to a 30-month term of intensive super-
vised probation on each of the three counts of the amended
information, with the terms ordered to run concurrently.
Conditions of Roth's probation included the requirement that
Roth not violate the law.

During Roth's term of probation, he received numerous
administrative sanctions, as well as two custodial sanctions for
failing to comply with his order regarding alcohol/drug testing
and consuming alcohol. Ultimately, the State filed a motion to
revoke Roth's probation, alleging Roth violated the terms of
his probation by violating the law. Roth had been arrested in
Lancaster County, Nebraska, and was accused of committing
the offenses of terroristic threats, use of a weapon to commit a
felony, domestic assault, and criminal mischief. The probation
officer stated that the alleged victim of these new charges was
the same victim in the present matter. The victim disclosed to
the police that Roth assaults her and threatens to kill her on a
regular basis.

Later, the State amended the motion to revoke proba-
tion to add allegations due to Roth's again being arrested in

Lancaster County for assault. At the arraignment hearing on the State's amended motion to revoke probation, upon Roth's admission, the court found him guilty of violating his probation order, directed the PSI be updated, and scheduled the matter for resentencing after the conclusion of his Lancaster County matters.

At sentencing, the court indicated that it had reviewed and considered the updated PSI which consisted of Roth's original PSI with an added cover letter that outlined the sanctions and charges that had occurred between the date the alleged probation violation was filed and the date on the cover letter. The cover letter pointed out the charges in Lancaster County that triggered the motion to revoke probation and the multiple sanctions he received. The letter also indicated that Roth had been deceitful about his residence by stating he had been living with his mother when he was actually living with the victim. Finally, the probation officer pointed out that Roth completed a domestic violence class in August 2020 and had maintained employment since the most recent administrative sanction, but his updated assessments showed very high scores in the procriminal attitude, antisocial patterns, and companions categories.

During his sentencing presentation, Roth's counsel informed the court that Roth had entered a plea agreement in the related Lancaster County case where he pled to two reduced charges of third degree domestic assault, both Class I misdemeanors, and was sentenced to 200 days in county jail.

The State asserted that Roth was already a high risk to reoffend when he was placed on probation and had minimized the seriousness of his actions. The State pointed out that Roth had been given an opportunity to have probation and that he reoffended against the same victim. Further, the State argued that the updated PSI scored Roth in the very high risk range in several categories. The State concluded that "due to the seriousness of this matter and this offender continues to re-offend again[st] the same victim . . . the State believes a term

of incarceration is necessary." The State asked the court to impose terms of imprisonment for each of the offenses, which could all run concurrent to one another but consecutive to the sentence imposed in the related Lancaster County matter.

Roth's counsel asked the court to simply terminate Roth's probation "unsatisfactorily" and allow him to be "essentially done with his case." It was pointed out that the violation of probation was 18 months prior with no additional violations since that time and that due to COVID-19, Roth's term of probation had been extended by 4 months beyond the original term. Defense counsel asserted Roth had successfully completed all the classes ordered during his time on probation. Defense counsel requested that if the court were to terminate probation and place Roth in a period of incarceration, the court impose a minimal time and allow it to run concurrent with the Lancaster County case he was currently serving. Roth told the court, "I'm just working toward[] bettering myself. And I want to get out, and see my nephew, and see my family, and learn my lesson, and keep doing what I have to do."

The court stated that Roth was given the privilege of probation and the opportunity to show he would abide by the law and "not, I repeat, not inflict further violence on women, this victim, or anyone else." He failed to do so, and "there is no excuse or justification for that." The court revoked Roth's probation and sentenced him to 3 years' imprisonment on counts I and II and 1 year's imprisonment on count III. The sentences were ordered to run concurrent with one another but consecutive with the sentence imposed in Lancaster County.

The court did not impose post-release supervision. It reasoned, "I will order no Post-Release Supervision at the end of your prison term, in that I do not feel it'd be a benefit to you or society, and it would be a waste of precious State resources."

## ASSIGNMENT OF ERROR

Roth assigns, reworded, that the district court abused its discretion when it imposed excessive sentences when it resentenced him following his probation revocation.

## STANDARD OF REVIEW

[1,2] When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.[1] A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[2]

[3,4] Consideration of plain error occurs at the discretion of an appellate court.[3] Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[4]

## ANALYSIS

### Excessive Sentences

Roth argues that the total sentence of 3 years' imprisonment after his probation was revoked is excessive because it "dramatically disproportionately punishes him."[5] Roth argues that the court ignored a number of mitigating factors, such as how long he had been successful on probation, his ability to complete the terms of his probation, and the fact that he was not ultimately convicted of felonies in Lancaster County District Court case No. CR20-575. Further, Roth asserts the court questioned his motivations when there was no evidence presented by the State about the nature of any violence against any woman other than the charges themselves "and the conduct that can result in a domestic violence conviction can range

---

[1] *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022).

[2] *Id*.

[3] *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022).

[4] *Id*.

[5] Brief for appellant at 8.

from minimal to extreme."[6] Finally, Roth asserts that the court seemed to completely ignore that he completed 34 months of probation due to the time this case took, which was 4 months more than was originally ordered.

Roth's original conviction for possession of a deadly weapon (not a firearm) by a prohibited person is a Class III felony and punishable by a maximum term of 4 years' imprisonment.[7] Roth's original conviction for third degree domestic assault is a Class I misdemeanor and punishable by a maximum term of not more than 1 year's imprisonment.[8] Roth was sentenced to 3 years' imprisonment on each of the possession of a deadly weapon (not a firearm) by a prohibited person convictions and 1 year's imprisonment for the third degree domestic assault conviction. When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles.[9] A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[10]

[5,6] When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime.[11] The sentencing court is not limited to

---

[6] *Id.* at 9.

[7] Neb. Rev. Stat. § 28-105 (Reissue 2016) and § 28-1206(3)(a).

[8] Neb. Rev. Stat. § 28-106 (Reissue 2016) and § 28-323.

[9] *State v. Blake, supra* note 1*; State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

[10] See *id*.

[11] *Id*.

any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[12]

Roth was 23 years old at the time of his original sentencing and 26 years old at the time of resentencing. Roth has a criminal history of two convictions of minor in possession, possession of marijuana, possession of drug paraphernalia, and two protection order violations, serving 10 days in jail in 2018 for such violations. Roth has a history of drug and alcohol use dating back to age 14, and Roth reported that his "'anger' comes out" when he drinks. Roth has a volatile history of domestic violence situations with the victim involved in this case, resulting in injuries to both of them in the past and multiple phone calls to the police. Roth's assessments indicated that Roth was considered to be in the high risk range for reoffending, and the probation office noted that the assessment suggested there was a high risk to the community for continued victimization.

While the probation office originally recommended probation due to Roth's stage of change and stated willingness to participate in probation, this confidence was shown to be misplaced. Roth violated the terms of his probation multiple times, including reoffending against the same victim, leading to new felony charges.

The district court recognized the appropriate factors when imposing Roth's sentences, and nothing in the record indicates that the court considered anything inappropriate. The sentences reflect the seriousness of the crimes committed, Roth's prior probation violations that required administrative and custodial sanctions, and Roth's volatile history with the victim. Considering the totality of the circumstances, we cannot say that the district court's sentences were untenable. We find the district court did not abuse its discretion in imposing

---

[12] *Id.*

a total sentence of 3 years' imprisonment to run consecutive to other sentences Roth was currently serving at the time of resentencing.

## Post-Release Supervision

The State argues the court committed plain error by failing to impose post-release supervision as part of Roth's total sentence. We agree.

Plain error may be found on appeal when an error unasserted or uncomplained of at trial, but plainly evident from the record, prejudicially affects a litigant's substantial right and, if uncorrected, would result in damage to the integrity, reputation, and fairness of the judicial process.[13] Consideration of plain error occurs at the discretion of an appellate court.[14]

[7-9] A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.[15] The power to define criminal conduct and fix its punishment is vested in the legislative branch, whereas the imposition of a sentence within these legislative limits is a judicial function.[16] Accordingly, a sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime.[17] And an appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced.[18]

[10] Post-release supervision is a form of probation.[19] Post-release supervision is defined by statute as "the portion

---

[13] *State v. Kipple, supra* note 3.

[14] *State v. Britt*, 283 Neb. 600, 813 N.W.2d 434 (2012); *State v. Young*, 279 Neb. 602, 780 N.W.2d 28 (2010).

[15] *State v. Galvan*, 305 Neb. 513, 941 N.W.2d 183 (2020).

[16] *State v. Kantaras*, 294 Neb. 960, 885 N.W.2d 558 (2016).

[17] *State v. Galvan, supra* note 15.

[18] See *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020).

[19] *State v. Galvan, supra* note 15.

of a split sentence following a period of incarceration under which a person found guilty of a crime . . . is released by a court subject to conditions imposed by the court and subject to supervision by the [Office of Probation Administration]."[20]

Primarily at issue with respect to the State's argument of plain error is Neb. Rev. Stat. § 29-2204.02 (Reissue 2016), subsections (1) and (4), and § 28-105.

The relevant sections of § 29-2204.02 state:

(1) Except when a term of probation is required by law as provided in subsection (2) of this section or except as otherwise provided in subsection (4) of this section, in imposing a sentence upon an offender for a Class III, IIIA, or IV felony, the court shall:

(a) Impose a determinate sentence of imprisonment within the applicable range in section 28-105; and

(b) Impose a sentence of post-release supervision, under the jurisdiction of the Office of Probation Administration, within the applicable range in section 28-105.

. . . .

(4) For any sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with (a) a sentence for a Class III, IIIA, or IV felony for an offense committed prior to August 30, 2015, or (b) a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision, in accordance with the process set forth in section 29-2204.

Section 28-105(1) provides that the minimum sentence following a conviction for Class III or IIIA felonies is "none for imprisonment and nine months post-release supervision if

---

[20] Neb. Rev. Stat. § 29-2246(13) (Reissue 2016).

imprisonment is imposed." It further provides that the maximum post-release supervision for Class III and IIIA felonies is 2 years and 18 months, respectively. Pursuant to § 28-105(1), a sentence of post-release supervision for a Class IV felony is a maximum of 12 months, but there is no minimum term of post-release supervision for a Class IV felony.

Subsections (6) and (7) of § 28-105 provide that certain listed felonies when sentenced concurrently or consecutively to other listed felonies "shall not be subject to post-release supervision":

> (6) Any person who is sentenced to imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for a Class III, IIIA, or IV felony shall not be subject to post-release supervision pursuant to subsection (1) of this section.

> (7) Any person who is sentenced to imprisonment for a Class III, IIIA, or IV felony committed prior to August 30, 2015, and sentenced concurrently or consecutively to imprisonment for a Class III, IIIA, or IV felony committed on or after August 30, 2015, shall not be subject to post-release supervision pursuant to subsection (1) of this section.

> (8) The changes made to the penalties for Class III, IIIA, and IV felonies by Laws 2015, LB 605, do not apply to any offense committed prior to August 30, 2015, as provided in section 28-116.

[11,12] In discerning the meaning of a statute, we must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense, it being our duty to discover, if possible, the Legislature's intent from the language of the statute itself.[21] Components of a series or collection of statutes pertaining to a certain

---

[21] *State v. Hofmann*, 310 Neb. 609, 967 N.W.2d 435 (2021).

subject matter are in pari materia and should be conjunctively considered and construed to determine the intent of the Legislature so that different provisions are consistent, harmonious, and sensible.[22]

Section 29-2204.02(1) plainly states that "except as otherwise provided in subsection (4) of this section," in imposing a sentence for a Class III, IIIA, or IV felony, the court "shall . . . [i]mpose a sentence of post-release supervision . . . within the applicable range in section 28-105." Subsection (4), in turn, plainly states that for an offense committed on or after August 30, 2015, the court "shall impose an indeterminate sentence . . . that does not include a period of post-release supervision" for any sentence of imprisonment for a Class III, IIIA, or IV felony that is imposed consecutively or concurrently with a sentence for a Class III, IIIA, or IV felony for an offense committed before August 30, 2015, or that is imposed consecutively or concurrently with "a sentence of imprisonment" for a Class I, IA, IB, IC, ID, II, or IIA felony.[23] Subsections (6) and (7) of § 28-105 are worded similarly, although subsection (6) begins with being sentenced to imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony and sentenced concurrently or consecutively to imprisonment for a Class III, IIIA, or IV felony, rather than the other way around.

[13,14] As a general rule, the use of the word "shall" is considered to indicate a mandatory directive, inconsistent with the idea of discretion.[24] The statutory provisions of §§ 29-2204.02 and 28-105 relating to post-release supervision are mandatory, and a sentence that fails to impose post-release supervision when required is an appropriate matter for our discretionary plain error review.

---

[22] See *id.*

[23] § 29-2203.02.

[24] *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).

The Nebraska Court of Appeals in *State v. Lillard*[25] explained that the mandatory language of § 29-2204.02 is broadly worded and not limited to multiple sentences imposed at the same time. Rather, it also applies to preexisting sentences still being served when a sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, is imposed. In so reading the statute, the Court of Appeals was also guided by Neb. Rev. Stat. § 83-1,135.02(3) (Cum. Supp. 2016), which provides that § 29-2204.02 applies to all committed offenders under sentence, on parole, or on probation on or after April 20, 2016, and to all persons sentenced on and after such date.

The defendant in *Lillard* had been simultaneously sentenced to 2 years' imprisonment for a Class IV felony committed in 2018 and 3 years' imprisonment plus 18 months' post-release supervision for a Class IIIA felony committed in 2018, to be served concurrently, and the court found that he was convicted of multiple felonies before 2015 that would fall under either § 28-105(6) or § 28-105(7), as well as the provisions of § 29-2204.02(4). The court agreed with the defendant and the State that both the imposition of post-release supervision and the fact that the sentences were determinate were unauthorized and invalid. The sentencing court had also erred by failing to address whether the sentences it imposed were to be served concurrently or consecutively with the pre-2015 felonies. The Court of Appeals vacated the sentences and remanded the cause for resentencing.

Similarly, with respect to the indeterminacy requirement of § 29-2204.02(4), we recently held in *State v. Starks*, "[I]t matters not when the underlying offenses occurred in relation to each other or that some of the relevant charges were brought via different charging documents."[26] Rather:

---

[25] *State v. Lillard*, 27 Neb. App. 824, 937 N.W.2d 1 (2019).

[26] *State v. Starks*, 308 Neb. 527, 536, 955 N.W.2d 313, 321 (2021).

Section 29-2204.02(4) is broad enough that it theoreti-
cally could be read to impose an indeterminacy require-
ment upon a Class III, Class IIIA, or Class IV felony
sentence imposed consecutively or concurrently with a
Class I, IA, IB, IC, ID, II, or IIA felony sentence that is
already in progress. What matters under § 29-2204.02(4)
is that the sentences for those offenses are "imposed con-
secutively or concurrently" to each other.[27]

In *Starks*, the defendant was previously convicted and sentenced
to probation which, after violations of probation, resulted in a
reinstatement of a Class IV felony charge. The violations of
probation included three Class IV felonies and one Class IIA
felony, to which he pled guilty. The court ordered an inde-
terminate sentence of incarceration for the Class IIA felony
conviction but a determinate sentence for each Class IV felony
conviction. All convictions were ordered to run consecutively.
We found the determinate sentences to be plain error, vacated
those sentences, and remanded the cause for resentencing.

While the offenses in *Lillard*[28] and *Starks*[29] occurred in
the same county, there is no reason why the same reasoning
would not apply to multiple sentences in different counties.
Neither party asserts that the fact that the sentences here at
issue occurred in different counties is legally relevant to the
application of § 29-2204.02(4). As we noted in *Starks*, the
language of § 29-2204.02(4) is broad. "What matters under
§ 29-2204.02(4) is that the sentences for those offenses are
'imposed consecutively or concurrently' to each other."[30] The
same can be said of § 28-105(6).

Thus, as relevant here, for offenses committed on or after
August 30, 2015 (as to all committed offenders under sentence,

[27] *Id.*

[28] *State v. Lillard, supra* note 25.

[29] *State v. Starks, supra* note 26.

[30] *Id.* at 536, 955 N.W.2d at 321.

on parole, or on probation on or after April 20, 2016, and to all persons sentenced on and after such date),[31] the court has the mandatory directive to impose a minimum of 9 months' post-release supervision when sentencing the defendant to a term of imprisonment for a Class III or Class IIIA felony, except when the term of imprisonment for the Class III or Class IIIA felony is imposed consecutively or concurrently with a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony (or with a sentence for a Class III, IIIA, or IV felony for an offense committed prior to August 30, 2015), in which case the court has a mandatory directive *not* to impose post-release supervision. Roth was sentenced to periods of incarceration for two Class III felonies and one Class I misdemeanor. The sentences were ordered to be served consecutively to the sentences in Lancaster County District Court case No. CR 20-575. As discussed, under § 29-2204.02(1)(b), except as otherwise provided in subsection (4), in imposing a sentence upon an offender for a Class III, IIIA, or IV felony, the court "shall" impose a sentence of post-release supervision within the applicable range in § 28-105. Under § 28-105(1) the minimum sentence following a conviction for Class III or IIIA felonies is "nine months post-release supervision if imprisonment is imposed."

It is accordingly plainly evident from the record that Roth's sentences fall under §§ 29-2204.02(1)(b) and 28-105(1), and nothing in the record suggests that the exceptions to these mandates of post-release supervision apply to Roth's sentences. We remind district courts that, as suggested by Justice Cassel in his concurrence in *Starks*, "[a] sentencing court should craft its judgment in each case with some thought regarding how that judgment, viewed in isolation, might appear to an appellate court."[32] This may sometimes require that the

---

[31] § 83-1,135.02.

[32] *State v. Starks, supra* note 26, 308 Neb. at 537, 955 N.W.2d at 321 (Cassel, J., concurring).

record demonstrate more than just "the sentence(s) imposed in that case,"[33] because we will not find plain error on appeal unless it is reasonably certain we have the "whole picture."[34] However, we are satisfied in this case that we have the whole picture. The parties agree that the sentences under Lancaster County District Court case No. CR 20-575 were for Class I misdemeanors. Class I misdemeanors do not trigger any exception to the mandate of post-release supervision set forth in §§ 29-2204.02(1)(b) and 28-105(1).

The district court committed plain error in failing to follow the statutory requirements of §§ 29-2204.02 and 28-105 of a minimum period of 9 months' post-release supervision for the Class III felonies for which periods of incarceration were imposed. These provisions are mandatory. The court did not have the discretion to ignore these mandates, whatever its opinion concerning the value of such supervision for this particular defendant.

[15] Section 29-2204.02(7)(b) states that "[i]f a period of post-release supervision is required but not imposed by the sentencing court, the term of post-release supervision shall be the minimum provided by law." Section 29-2204.02(7)(c) provides that "[i]f the court imposes more than one sentence upon an offender or imposes a sentence upon an offender who is at that time serving another sentence, the court shall state whether the sentences are to be concurrent or consecutive." We said in *State v. Galvan*[35] that the trial court's discretion to direct that sentences be served either concurrently or consecutively applies equally to terms of imprisonment and terms of post-release supervision. Further, Neb. Ct. R. § 6-1904 sets forth several requirements in cases requiring a post-release supervision, including that the court shall enter a separate post-release supervision order that includes

---

[33] *Id.*

[34] *Id.* (internal quotation marks omitted).

[35] See *State v. Galvan, supra* note 15.

conditions pursuant to Neb. Rev. Stat. § 29-2262 (Reissue 2016) and that the court shall specify on the record that the conditions of the order of post-release supervision may be modified or eliminated pursuant to Neb. Rev. Stat. § 29-2263 (Reissue 2016). Thus, while it is clear that the term of post-release supervision for Roth must be 9 months, we must remand the cause to the district court.

## CONCLUSION

Finding plain error in the court's failure to impose post-release supervision, we vacate the sentences and remand the cause with directions to modify the sentences to impose 9 months' post-release supervision and determine, in accordance with § 28-105(5) and § 6-1904, the specific terms of the post-release supervision and whether the post-release supervision is to be served concurrently or consecutively to any other terms of post-release supervision.

Vacated and remanded with directions.