IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. JACKSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAMON G. JACKSON, APPELLANT.

Filed January 30, 2024.   No. A-23-411.

Appeal from the District Court for Sarpy County: STEFANIE A. MARTINEZ, Judge. Affirmed.

Gregory A. Pivovar for appellant.

Michael T. Hilgers, Attorney General, and Jordan Osborne for appellee.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Damon G. Jackson was 17 years old when he was charged in the district court for Sarpy County with first degree assault and robbery. Pursuant to a plea agreement, Jackson pled guilty to robbery, a Class II felony, and was sentenced to 4 to 30 years' imprisonment. Jackson now appeals his sentence arguing the district court abused its discretion in not sentencing him to a period of probation and by imposing an excessive sentence. Jackson also assigns that his trial counsel was ineffective because she did not appeal the denial of his motion to transfer to juvenile court. For the reasons that follow, we affirm.

### BACKGROUND

On July 20, 2022, Jackson, Jamar Minton, and Denzel Williams drove to a Walmart looking to fight another group of young men. Upon arriving at the Walmart, Jackson's group

identified a teenager, B.C. After some back and forth, Jackson charged at B.C., threw him to the ground and continued to punch, kick, and stomp on him. At some point, Minton and Williams also joined in the attack. After the assault ceased, Minton retrieved what appeared to be an AR style rifle from the vehicle. It was later discovered this firearm was an airsoft or BB rifle. With the firearm in hand, Minton instructed B.C. to remove his clothes. While B.C. removed his clothes, Jackson made a recording with his cellphone. Jackson, Minton, and Williams then took B.C.'s clothing and placed it in the trunk of their vehicle, leaving B.C. naked in the Walmart parking lot. Following the assault, B.C. sought medical attention where it was discovered that he had a lacerated spleen. B.C. was hospitalized for approximately 2 days and incurred medical expenses of around $33,113. Jackson, Minton, and Williams did not know B.C. prior to this incident.

On September 12, 2022, Jackson was charged in the district court with two Class II felonies for first degree assault and robbery. On September 14, Jackson filed a motion for transfer to juvenile court. A hearing was held on that motion, and on January 25, 2023, the court issued an order denying the transfer.

On March 1, 2023, Jackson entered into a plea agreement where he pled no-contest to the robbery charge in exchange for the State dismissing the first degree assault charge. The district court accepted Jackson's plea, found him guilty, and convicted him of robbery, a Class II felony. The court ordered a presentence investigation report (PSI), and scheduled sentencing to occur on May 2.

At the sentencing hearing, Jackson and his attorney were given the opportunity to speak on his behalf. His attorney requested the court place Jackson on probation. Jackson's attorney cited his limited criminal history which only included a prior juvenile diversion for a shoplifting charge and traffic tickets. Further, his attorney outlined that Jackson had the drive and support necessary to be successfully rehabilitated. The State then summarized Jackson's involvement in the assault and how he tried to assert his dominance and physically impose himself upon arriving at the scene. The State explained that Jackson was the primary assaulter and continued attacking B.C. after he fell to the ground. Based on these factors, the State requested a term of incarceration. Jackson declined to say anything on his own behalf.

Prior to levying its sentence, the Court stated:

In determining what [sentence] ought to be imposed, I've considered his age, mentality, education, experience, and social and cultural background, past criminal record or law-abiding conduct, the motivation for the offense as well as the nature of the offenses and the amount of violence involved in the commission of the crime. I considered the information presented by the parties, the arguments of Counsel, the information within the [PSI] as well as the sentencing brief and attached letters of support on behalf of [Jackson]. For purposes of sentencing today, the Court, based on all of that information, finds that imprisonment . . . is necessary because a lesser sentence would depreciate the seriousness of the crime and promote disrespect for the law.

The district court proceeded to sentence Jackson to 4 to 30 years' imprisonment, with credit for time served. Jackson now appeals.

ASSIGNMENTS OF ERROR

Restated, Jackson assigns the district court abused its discretion in failing to grant him a period of probation and in imposing an excessive sentence. Additionally, Jackson assigns he received ineffective assistance of counsel because his trial counsel failed to appeal the denial of his motion to transfer to juvenile court.

STANDARD OF REVIEW

A sentence imposed within statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Earnest*, 315 Neb. 527, 997 N.W.2d 589 (2023). An abuse of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal; the determining factor is whether the record is sufficient to adequately review the question. *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022). The record is sufficient to resolve on direct appeal a claim of ineffective assistance of counsel if the record affirmatively proves or rebuts either deficiency or prejudice with respect to the defendant's claims. *Id.*

ANALYSIS

*Jackson's Sentence.*

Jackson assigns the district court abused its discretion by not granting him probation and by imposing an excessive sentence. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). However, it is not necessary for a sentencing court to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

Jackson's conviction for robbery is a Class II felony which is punishable by 1 to 50 years' imprisonment with no mandatory minimum term of imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Accordingly, the district court's sentence of 4 to 30 years' imprisonment was within the appropriate statutory range.

When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Roth, supra.* A judicial abuse of discretion exists only when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether probation or incarceration is ordered is a choice within the discretion of the trial court, whose judgment denying probation will be upheld in the absence of an abuse of discretion. *State v. Senteney*, 307 Neb. 702, 950 N.W.2d 585 (2020). Jackson's argument centers around the factors contained within Neb. Rev. Stat. § 29-2260 (Reissue 2016) which outlines when an

offender should be granted probation in lieu of imprisonment. He asserts multiple factors under § 29-2260(3) supported a sentence of probation and that the district court abused its discretion when it ignored those statutory factors.

Section 29-2260(2) states that for an offender convicted of either a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required, the court may withhold sentence of imprisonment unless, having regard to the nature and circumstances of the crime and the history, character, and condition of the offender, the court finds that imprisonment of the offender is necessary for protection of the public because: (a) the risk is substantial that during the period of probation the offender will engage in additional criminal conduct, (b) the offender is in need of correctional treatment that can be provided most effectively by commitment to a correctional facility, or (c) a lesser sentence will depreciate the seriousness of the offender's crime or promote disrespect for law.

Further, § 29-2260(3) sets forth several grounds that while not controlling the discretion of the court, shall be accorded great weight in favor of withholding a sentence of imprisonment: (a) the crime neither caused nor threatened serious harm; (b) the offender did not contemplate that his or her crime would cause or threaten serious harm; (c) the offender acted under strong provocation; (d) substantial grounds were present tending to excuse or justify the crime, though failing to establish a defense; (e) the victim of the crime induced or facilitated commission of the crime; (f) the offender has compensated or will compensate the victim of his or her crime the damage or injury the victim sustained; (g) the offender has no history of prior delinquency or criminal activity and has led a law-abiding life for a substantial period of time before the commission of the crime; (h) the crime was the result of circumstances unlikely to recur; (i) the character and attitudes of the offender indicate that he or she is unlikely to commit another crime; (j) the offender is likely to respond affirmatively to probationary treatment; and (k) imprisonment of the offender would entail excessive hardship to his or her dependents.

The Nebraska Supreme Court has stated that § 29-2260 is a directive to the trial court as to certain factors to be considered in imposing the sentence, but it does not control the trial court's discretion as to the proper sentence to be imposed. See *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020). While the specified factors must be "accorded weight," they are neither exclusive of other factors nor "controlling the discretion of the court." *Id.* at 147, 939 N.W.2d at 381. As such, in weighing the factors, the sentencing court is not limited to any mathematically applied set of factors. *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023). Instead, the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* Additionally, § 29-2260 does not require the trial court to articulate on the record that it has considered each sentencing factor, and it does not require the court to make specific findings as to the factors and the weight given them. *State v. McCulley, supra.* Thus, the absence of specific findings concerning the factors set forth in § 29-2260 cannot in itself be error or grounds for reversal. *State v. McCulley, supra.*

Having considered the record and the relevant factors in this case, we cannot say the district court's conclusion that Jackson was unsuited for probation was an abuse of discretion. Likewise, we conclude the district court did not abuse its discretion in fashioning Jackson's sentence. The district court considered all factors that it was required by law to consider. The court noted that it

considered Jackson's age, mentality, education, experience, social and cultural background, past criminal record, past law-abiding conduct, the motivation for the offense, the amount of violence involved in the commission of the crime, the information presented by the parties, the arguments of counsel, the information within the PSI, and Jackson's letters of support. After the consideration of this information, the court found that any lesser sentence than jail time would depreciate the seriousness of Jackson's offense and promote disrespect for the law.

The recording of the assault displays that Jackson charged at B.C., threw him to the ground, and then continued punching, kicking, and stomping on him. The relentlessness of the attack resulted in B.C. accruing serious injuries. More so, following the assault, Jackson took part in robbing B.C. at gunpoint by recording him as he was forced to remove his clothes.

Jackson's PSI concludes that he has "violent tendencies," an "elevated risk for future criminal conduct," and a "medium high risk to reoffend." On his Level of Service Case Management Inventory (LS/CMI), Jackson scored "high" in the leisure/recreation, companions, and antisocial pattern areas. Overall, he scored a 17 on the LS/CMI which placed him in the "medium high risk to reoffend." On his behavioral health and responsibility considerations, Jackson scored a 73 percent in the violence category which falls into the "Problem" range. Within this section, it was noted that Jackson's "[v]iolent tendencies are evident" and are characterized by "inconsiderateness, harshness, unruliness, and explosiveness." Overall, the PSI concluded that Jackson had an elevated risk for future criminal conduct.

Also included in the PSI was a victim impact statement submitted by B.C.'s mother. In this letter she outlined the physical and mental effects that the attack had on her son. He was diagnosed with PTSD and deals with ongoing intense psychological distress. She stated that B.C. now "suffers from involuntary flashbacks, nightmares, social withdrawals, anxiety, depression, extreme hypervigilance, and concentration issues in school." Additionally, because Jackson recorded B.C. removing his clothes, the video displaying him being forced to strip down is constantly reposted online. This results in difficulties in attending school and associating with peers. B.C.'s mother continued to state that the attack ruined her son's high school years, and he had considered dropping out of high school and getting his GED to avoid continued traumatization. Due to the effects the assault had on her son, B.C.'s mother requested a lengthy term of imprisonment for those involved.

The district court's comments at the sentencing hearing reflected that it had reviewed the PSI report and considered all of the relevant factors with respect to Jackson and the particular circumstances of this case. Based upon this record, we do not find the district court abused its discretion in levying the sentence it imposed.

*Ineffective Assistance of Counsel.*

Jackson next assigns that he received ineffective assistance of counsel because his trial counsel did not appeal the district court's denial of his motion to transfer to juvenile court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). Otherwise, the issue will be procedurally barred. *Id.* In other words, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it

can be resolved. *Id.* The determining factor is whether the record is sufficient to adequately review the question. *Id.* Thus, in reviewing Jackson's claim of ineffective assistance of counsel on direct appeal, we decide only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

We conclude that the record is insufficient to resolve Jackson's assignment that his trial counsel was ineffective on direct appeal. It is fundamental to a claim of ineffective assistance of counsel based on failure to appeal that the defendant directed that such appeal be filed. *State v. Russell*, 308 Neb. 499, 954 N.W.2d 920 (2021). The record is silent as to whether Jackson directed his attorney to file an interlocutory appeal following the denial of his motion to transfer to juvenile court. As a result, we do not know whether an appeal was discussed, or what directives Jackson gave to trial counsel regarding the denial of the motion to transfer. Therefore, the record is insufficient to address this assignment of error on direct appeal.

CONCLUSION

We find the district court did not abuse its discretion in sentencing Jackson to 4 to 30 years' imprisonment. We also conclude the record is insufficient to address Jackson's claim of ineffective assistance of counsel on direct appeal.

AFFIRMED.