IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GAYLORD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CODY W. GAYLORD, APPELLANT.

Filed September 17, 2024.    Nos. A-24-053 through A-24-056.

Appeals from the District Court for Keith County: MICHAEL E. PICCOLO, Judge. Affirmed in part, and in part vacated and remanded for resentencing.

Steven E. Elmshaeuser for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Cody W. Gaylord was convicted in the district court for Keith County of one Class IIA felony and five Class IV felonies related to several burglaries, theft, and possession of methamphetamine. On appeal, he asserts the district court abused its discretion by not granting his motion to continue the sentencing when there were numerous errors in his presentence investigation report (PSI), ordering him to pay restitution without receiving evidence that he was able to pay restitution, and imposing excessive sentences.

We affirm the decisions of the district court for Gaylord's first two assigned errors and determine it did not excessively sentence him on his Class IIA felony conviction. However, we find the court plainly erred by imposing determinative sentences for his Class IV felony convictions when it was required to impose indeterminate sentences. Accordingly, we vacate the sentences imposed for his Class IV felony convictions and remand those causes for resentencing.

- 1 -

BACKGROUND

On February 15, 2023, Gaylord was charged with possession of methamphetamine, third-degree assault, and criminal mischief. On May 10, he was charged with three counts of burglary, two counts of theft by taking over $5,000, two counts of theft by taking over $1,500, three counts of criminal mischief over $1,500, theft by receiving less than $500, and unauthorized use of a vehicle. In an additional case filed on May 10, he was charged with burglary, two counts of theft by taking over $5,000, theft by taking over $1,500, possession of methamphetamine, criminal mischief over $1,500, theft by taking less than $500, unauthorized use of a vehicle, second-degree trespass, and possession of drug paraphernalia. On July 5, another information was filed against Gaylord charging him with theft by receiving over $5,000, theft by receiving over $1,500, two counts of theft by receiving over $500, and two counts of theft by receiving less than $500. In total, Gaylord was charged with 31 criminal counts across four cases.

Except for the charges related to his possession of methamphetamine, these charges largely stemmed from a string of burglaries where Gaylord broke into several nearby lake houses and stole the homeowners' belongings. From one house, he stole a four-wheeler and the homeowner's set of keys. In another incident, he stole a 2000 Ford F-250, a catalytic converter, a gaming system, various games, paddle boards, and other outdoor activity items. He also stole a 2013 Ford F-350 and a jet-ski from a different residence. And at several different houses, Gaylord stripped the motors and other equipment off several boats.

On October 4, 2023, Gaylord entered into a global plea agreement to resolve all four cases. In the first case, he pled no contest to possession of methamphetamine, a Class IV felony, and the other two charges were dismissed. In the second case, he pled no contest to two counts of theft by taking over $1,500, which are Class IV felonies, and the remaining ten charges were dismissed. In the third case, he pled no contest to one count of theft by taking over $5,000, a Class IIA felony, and the other nine charges were dismissed. In the last case, he pled no contest to two counts of theft by receiving over $1,500, which are Class IV felonies, and the other four charges were dismissed. In total, Gaylord pled to one Class IIA felony and five Class IV felonies. The court convicted Gaylord of those charges and ordered the completion of a PSI.

On December 20, 2023, the court held Gaylord's restitution and sentencing hearings. Gaylord's attorney began by pointing out inaccuracies in the PSI. It appeared that in preparing the report, the probation officer mixed Gaylord's information with another individual. Specifically, the PSI incorrectly calculated the amount of Gaylord's jail credit, indicated he was convicted of two Class IIA felonies, instead of just the one, misstated that he was on a personal recognizance bond instead of a treatment bond, had paragraphs that abruptly ended, and included a false prior forgery conviction and probation term from Kansas.

With these errors, Gaylord's attorney raised concerns about the results of Gaylord's Level of Service/Case Management Inventory, which scored him as a "medium high risk". His attorney also questioned the criminal history portion of the assessment that scored him as a "medium risk," although his criminal history only included a 2010 conviction for DUI and a 2011 conviction for minor in possession. Gaylord's attorney also vocalized concerns that his score might have been inflated by the erroneous supplemental Class IIA felony conviction and the forgery conviction from Kansas. In doing so, he stated "If the Court wants to have the PSI updated to reflect accurate

information, we can take a restitution hearing today, come back for sentencing in short order. But I have – I have concerns about the accuracy of the PSI at this point."

The court indicated that it wanted to proceed with sentencing and allowed the attorneys to question the probation officer, Stormy Inghram, about the errors in the PSI. She explained that the multiple errors probably arose because she forgot to delete another client's information when formatting Gaylord's PSI. She was then asked about his LS/CMI result and how it was scored. Although she stated the forgery charge did not impact Gaylord's overall score, she was unable to clearly articulate what information is entered for the assessment. She testified that in making the PSI she would have used the criminal history on the fourth page of the PSI, which accurately detailed Gaylord's criminal history. But she later stated that she was unsure if she included the forgery charge when entering Gaylord's criminal history into the program. Generally, although Inghram expressed that the errors probably did not affect the LS/CMI scores, her testimony was not consistent or clear as to what information the assessment requires and how it is scored. Nevertheless, upon both parties questioning her, the court continued with the sentencing and restitution hearings.

The State then called multiple of Gaylord's victims as witnesses to recount the damages they incurred and to provide their victim statements for his sentencing. The State, Gaylord's attorney, and Gaylord, then addressed the court. The State requested a substantial term of incarceration ranging from 12 to 15 years. Gaylord's attorney requested a lengthy term of probation and detailed Gaylord's struggle with methamphetamine addiction and his efforts to turn his life around by seeking treatment. He explained that upon Gaylord's release from jail on a treatment bond he was able to finding housing at a half-way house and secure full-time employment. Gaylord then apologized to the numerous victims and told the court about how he was taking steps to improve his life and attempting to stay sober.

In sentencing Gaylord, the court went case by case. In the first case, where Gaylord was convicted of a Class IV felony for possession of methamphetamine, he was sentenced to 14 months' imprisonment. In the second case, where he was convicted of two Class IV felonies for theft by taking over $1,500, he was sentenced to concurrent 20-month terms of imprisonment. In the third case, where he was convicted of a Class IIA felony for theft by taking over $5,000, he was sentenced to 4 to 8 years' imprisonment. And in the last case, where he was convicted of two Class IV felonies for theft by receiving over $5,000 and theft by receiving over $1,500, he was sentenced to concurrent 20-month terms of imprisonment. The court concluded by ordering the sentences in each case to be served consecutively to one another.

The court then determined the amount of restitution Gaylord owed to his victims. Michael and Shelly Millo requested $500 to cover their insurance deductible, $1,926.18 for depreciation, and $1,584.32 for the paid-time off they took to remedy their home after Gaylord's break-in. The court determined that only the insurance deductible was compensable and awarded them $500 in restitution.

Clinton and Cassie Zurn requested $181.48 to repair their 4-wheeler ignition, $45 for new locks for their home, $300 for the security cameras they put up after the break-in, and $1,345.20 in lost wages. The court determined that only the ignition repair and the new locks were compensable and awarded them $226.48 in restitution. Brad and Joyelle Kennedy requested

$2,382 for the insurance deductible related to the repair of their boat and $1,234.75 for the amount above their insurance limit. The court awarded both in the amount of $3,616.75.

Richard and Angela Zwisler requested $149.99 for a video doorbell, $359.98 for a floodlight camera, $251.41 for a ring camera, and $407.35 for a new deadbolt on their door. The court determined that only the deadbolt was compensable and awarded them $407.35 in restitution. Marvin Henkel requested $500 to cover the insurance deductible for his stolen boat motor. The court determined he was entitled to that restitution. David Goranson requested $8,468.52 for the cost of the items he was still missing from the break-in, $369.81 in travel expenses, and $650 in repair costs. The court ordered restitution to compensate for the repair costs and the price of the missing items, but not the travel expenses. In total, the court awarded him $9,118.52.

Mark Wickard requested $1,500 to cover the insurance deductible he paid to repair his boat and was awarded that amount. Lastly, Larry Fletcher requested $250 to cover an insurance deductible, which was awarded by the court.

In total, the court ordered Gaylord to pay $16,119.12 in restitution and ordered that amount to be paid within 5 years of his release from prison.

Gaylord now appeals.

### ASSIGNMENTS OF ERROR

Restated, Gaylord assigns the district court abused its discretion by (1) denying his request to continue his sentencing hearing to correct the errors within the PSI; (2) ordering restitution without any evidence of his ability to pay the amount ordered; and (3) imposing excessive sentences.

### STANDARD OF REVIEW

An appellate court will not consider an argument or theory that is raised for the first time on appeal. *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023).

The rule that a sentence will not be disturbed on appeal absent an abuse of discretion is applied to the restitution portion of a criminal sentence, and the standard of review for restitution is the same as it is for other parts of the sentence. *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020).

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Johnson, supra*. A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition. *Id.*

### ANALYSIS

*Motion to Continue.*

Gaylord first assigns the district court erred by overruling his motion to continue the sentencing hearing. He argues that the PSI contained so many false entries and mistakes that it should have been corrected before he was sentenced.

Although Gaylord's attorney discussed the erroneous information contained in the PSI and expressed concerns about continuing without correcting the errors, no motion to continue was ever

made. When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Id.*

Instead of motioning for a continuance, Gaylord's attorney only stated "If the Court wants to have the PSI updated to reflect accurate information, we can take a restitution hearing today, come back for sentencing in short order. But I have – I have concerns about the accuracy of the PSI at this point." After this comment, the State acknowledged that the probation officer was present, and the court allowed her to testify. But at no point did Gaylord ever explicitly motion to continue the sentencing hearing. Accordingly, the court never ruled on the issue. Because the purported motion to continue was never raised before the trial court, we are unable to determine the court abused its discretion.

However, even if we assumed that the comments by Gaylord's attorney were adequate to request a continuance and the court overruled his request, we determine that Gaylord fails to demonstrate he was prejudiced by the decision. A court does not abuse its discretion in denying a continuance unless it clearly appears that the party seeking the continuance suffered prejudice because of that denial. *State v. Baxter*, 295 Neb. 496, 888 N.W.2d 726 (2017). At the sentencing hearing, both parties had the opportunity to question Inghram regarding the inaccuracies in her report. And although she was not entirely consistent on what information she entered to retrieve Gaylord's LS/CMI score, she identified the fourth page of the PSI as an accurate description of Gaylord's criminal history.

Further, before pronouncing its sentences, the court explicitly stated that its sentencing decisions did not rely on the erroneously included forgery conviction or Gaylord's LS/CMI score. Specifically, the court stated:

> The Court has reviewed the presentence investigation [report]. I know there [are] some issues that relate to that; however, the Court did not consider the forgery [conviction] as part of the sentencing order.
>
> . . . .
>
> The Court does not make a finding that the LS/CMI has any impact on this Court's decision, whether it's 17 or lower or even higher, the Court has considered the totality of Mr. Gaylord's crimes as he's committed and other factors.

Because the court made it clear that the erroneous information within the PSI had no bearing on its sentencing decisions, Gaylord is unable to demonstrate he was prejudiced by the PSI being inaccurate. As such, even if we assumed Gaylord properly motioned for a continuance and the court overruled his motion, we are unable to determine the court abused its discretion.

*Restitution.*

Gaylord next assigns the district court erred by ordering him to pay restitution without adducing any evidence that demonstrated he was able to pay the restitution.

Neb. Rev. Stat. § 29-2280 (Reissue 2016) vests trial courts with the authority to order restitution for actual damages sustained by the victim of a crime for which the defendant is convicted. Neb. Rev. Stat § 29-2281 (Reissue 2016) elaborates that before restitution can be properly ordered, the trial court must consider (1) whether restitution should be ordered, (2) the

amount of actual damages sustained by the victim of a crime, and (3) the amount of restitution a criminal defendant is capable of paying. *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020). Although restitution, like any other part of the sentence, involves discretion, the Nebraska Supreme Court has also held that sentencing courts must meaningfully consider the evidence and weigh the statutory factors set forth in § 29-2281 to determine whether restitution is appropriate. *State v. McCulley, supra.*

Although the Nebraska Supreme Court has cautioned that it is always good practice for district courts to provide a record of their reasoning, § 29-2281 does not require the sentencing court to specifically articulate that it has considered the listed statutory factors. See *State v. McCulley, supra.* It also does not require that trial courts make explicit findings as to facts pertaining to the statutory factors or the relative weight given to each factor. *Id.* The absence of articulated findings is not in itself reversible error. *Id.* And absent evidence to the contrary, we presume that the sentencing court has considered the appropriate factors to be weighed before determining whether to order restitution. *Id.* As always, the burden is on the appellant to show that the sentencing court has abused its discretion. *Id.*

By its plain language, § 29-2281 does not require that the defendant be able to pay as a prerequisite to an order of restitution, so long as the defendant is not granted or denied probation or parole either solely or primarily due to his or her financial resources or ability or inability to pay restitution. *State v. McCulley, supra.* While the factors of the defendant's earning ability, employment status, financial resources, and family or other legal obligations principally implicate the extent to which a defendant is able to pay restitution, notably absent from § 29-2281 is any indication that the court lacks discretion, when balancing those factors against the defendant's obligation to the victim and other considerations, to order restitution as part of a sentence despite an inability to pay. *State v. McCulley, supra.* Instead, those factors need only be given meaningful weight. *Id.*

We determine the record contains evidence that enabled the court to consider Gaylord's ability to pay the ordered restitution. A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence. *Id.* Furthermore, statements made by a defendant during a presentence investigation regarding his or her financial condition are the defendant's own statements and would be allowable evidence against him or her under the Nebraska Evidence Rules. *Id.*

At the restitution hearing, evidence was adduced that Gaylord graduated high school, attended some college, and was able to obtain full-time employment within a week after he was released on a treatment bond. Additionally, the PSI reflects that Gaylord indicated the desire and ability to pay restitution when he told the probation officer that he "repented for [his] crimes and [was] going to pay restitution[.]" With this evidence in the record demonstrating that Gaylord was able to find employment, had an income, and sought to pay restitution, we determine the court complied with the requirements of § 29-2281. Therefore, we conclude that the district court did not abuse its discretion when it ordered Gaylord to pay restitution.

*Excessive Sentences.*

Gaylord next assigns the district court abused its discretion when it did not sentence him to a term of probation. He essentially argues that his minimal criminal history, completion of an inpatient treatment program, residence in a halfway house, commitment to remaining sober, and capacity to work, supported that he was capable of successfully completing a term of probation. Additionally, he asserts that a probation sentence would allow him to work towards paying the ordered restitution.

The State contests that the court abused its discretion in sentencing Gaylord on his Class IIA felony conviction, but asserts the court committed plain error when it imposed determinative sentences on his five Class IV felony convictions.

Neb. Rev. Stat. § 29-2204.02(4) (Reissue 2016) states:

For any sentence of imprisonment for a Class III, IIIA, or IV felony for an offense committed on or after August 30, 2015, imposed consecutively or concurrently with . . . (b) a sentence of imprisonment for a Class I, IA, IB, IC, ID, II, or IIA felony, the court shall impose an indeterminate sentence within the applicable range in section 28-105 that does not include a period of post-release supervision, in accordance with the process set forth in section 29-2204.

This language obligates a district court to impose indeterminate sentences for such convictions. *State v. Brown*, 317 Neb. 273, 9 N.W.3d 871 (2024). A sentencing court articulates an indeterminate sentence by setting forth a minimum and maximum term or a range of time for which a defendant is to be incarcerated, whereas a determinate sentence is a single term of years. *Id.*

A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review. *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). A sentence is illegal when it is not authorized by the judgment of conviction or when it is greater or less than the permissible statutory penalty for the crime. *Id.* An appellate court has the power on direct appeal to remand a cause for the imposition of a lawful sentence where an erroneous one has been pronounced. *Id.*

Gaylord was convicted of one Class IIA felony and five Class IV felonies. The district court imposed an indeterminate sentence of 4 to 8 years' imprisonment for his Class IIA felony conviction but sentenced him to a determinate term of 14 months' imprisonment and four determinative terms of 20 months' imprisonment on his Class IV felony convictions. Because the court's sentences on Gaylord's Class IV felony convictions were determinative instead of indeterminate, we find that the court plainly erred. See *State v. Brown, supra.* Accordingly, we remand the matter back to the district court to resentence Gaylord on his Class IV felony convictions in accordance with § 29-2204.02(4) and Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022).

While we remand the issue of Gaylord's Class IV felony sentences back to the district court, we determine the court did not abuse its discretion in sentencing him to 4 to 8 years' imprisonment on his Class IIA felony conviction. When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in

the commission of the crime. *Id.* However, it is not necessary for a sentencing court to articulate on the record that it has considered each sentencing factor nor to make specific findings as to the facts pertaining to the factors or the weight given to them. *State v. Greer*, 309 Neb. 667, 962 N.W.2d 217 (2021).

Gaylord was convicted on one count of theft by taking over $5,000, a Class IIA felony. Class IIA felonies have a maximum of 20 years' imprisonment and no minimum term. See § 28-105. Accordingly, the district court's sentence of 4 to 8 years' imprisonment was within the appropriate statutory range. When sentences imposed within statutory limits are alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering well-established factors and any applicable legal principles. *State v. Roth, supra*.

While Gaylord has a minimal criminal history and the results of his LS/CMI assessment were questionable, we determine that his sentence was not clearly untenable given the circumstances of his crime. The Class IIA felony conviction stemmed from his stealing a 2013 Ford F-350 and a jet-ski from a home while the owners were away. Further, this incident was just one of the many burglaries and thefts Gaylord committed from November 2022 until July 2023. This crime, along with the others, not only affected the property of multiple families but impacted their sense of safety and community. When sharing their victim impact statements, multiple victims expressed a continued fear for their safety since the thefts, the loss of their peace of mind, and the loss of irreplaceable possessions. Although we believe the court's sentence would not be clearly untenable even if the Class IIA felony stood alone, given that Gaylord's theft of the truck and jet-ski were a part of a broader crime spree, we determine that the court's sentence of 4 to 8 years' imprisonment was not an abuse of discretion.

CONCLUSION

We determine that Gaylord's first assignment of error fails because the court made it clear that the erroneous information within the PSI had no bearing on its sentencing decisions and, as a result, Gaylord is unable to demonstrate he was prejudiced by the PSI being inaccurate. We also determine that the court did not abuse its discretion in ordering Gaylord to pay restitution to his victims. We next conclude the district court did not abuse its discretion in sentencing Gaylord to 4 to 8 years' imprisonment on his Class IIA felony conviction; but we do find plain error in the indeterminate sentences imposed for each of his Class IV felony convictions. Therefore, we vacate Gaylord's sentences on each of his Class IV felony convictions and remand those causes for resentencing in accordance with §§ 29-2204.02(4) and 28-105.

AFFIRMED IN PART, AND IN PART VACATED
AND REMANDED FOR RESENTENCING.