Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/02/2024 09:07 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
MARCUS BROWN, APPELLANT.
___ N.W.3d ___

Filed August 2, 2024.    No. S-23-506.

1. **Criminal Law: Convictions: Evidence: Appeal and Error.** When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

3. **Sentences: Restitution: Appeal and Error.** The rule that a sentence will not be disturbed on appeal absent an abuse of discretion is applied to the restitution portion of a criminal sentence just as it is to any other part of the sentence; sentences within statutory limits will be disturbed by an appellate court only if the sentence complained of was an abuse of judicial discretion.

4. **Sentences: Appeal and Error.** A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.

5. ____: ____. Whether a sentence is authorized by statute presents a question of law, which an appellate court reviews de novo.

6. **Effectiveness of Counsel: Proof: Appeal and Error.** When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense.

7. **Intent: Proof: Circumstantial Evidence.** A defendant's intent is a question of fact that may be inferred from the circumstances surrounding the act.

8. **Evidence: Proof.** A fact may be proved by direct evidence alone, by circumstantial evidence alone, or by a combination of the two.

9. **Appeal and Error.** Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

10. **Sentences: Legislature: Probation and Parole.** Imprisonment and probation are mutually exclusive sentencing alternatives, and the Legislature has not authorized combining imprisonment and probation in the same sentence.

11. **Effectiveness of Counsel: Appeal and Error.** An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law.

12. ____: ____. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

13. **Trial: Witnesses: Testimony.** Witnesses' bias affects the reliability of their testimony at trial.

14. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

15. **Motions for Mistrial.** Decisions regarding motions for mistrial are directed to the discretion of the trial court.

16. **Motions for Mistrial: Appeal and Error.** Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.

17. **Juror Misconduct: Proof.** When an allegation of jury misconduct is made and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred.

18. **Juror Misconduct: Trial.** If jury misconduct occurred, the trial court must determine whether it was prejudicial to the extent that the defendant was denied a fair trial.

19. **Juror Misconduct: Appeal and Error.** If the trial court determines that jury misconduct did not occur or that it was not prejudicial, adequate findings are to be made so that the determination may be reviewed.

20. **Juror Misconduct: Words and Phrases.** A jury commits serious misconduct when it considers extraneous prejudicial information, which means information existing or originating outside or beyond the evidence presented at trial.

21. **Juror Misconduct: Evidence.** When a jury merely makes a more critical examination of an exhibit that had been admitted into evidence, without alteration or manipulation, a jury does not commit serious misconduct.

Appeal from the District Court for Douglas County, KATIE L. BENSON, Judge. Conviction affirmed, sentence vacated, and cause remanded for resentencing.

Kenneth Jacobs and Tasia Matsuda, Senior Certified Law Student, of Hugs and Jacobs, L.L.C., for appellant.

Michael T. Hilgers, Attorney General, Erin E. Tangeman, and Emily Doll, Senior Certified Law Student, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## I. INTRODUCTION

Marcus Brown appeals from his conviction and sentence after a jury trial wherein he was found guilty of theft by unlawful taking,[1] $5,000 or more, a Class IIA felony.[2] The district court sentenced Brown to serve 90 days in the custody of Douglas County Correctional Services and "[a]fter that" to serve a term of 3 years' probation.[3] As a condition of probation, the court ordered Brown to pay approximately $11,000 in restitution to the victim of the theft within the first year of probation.[4] We affirm Brown's conviction and, finding plain error, vacate his sentence and remand the cause for resentencing.

---

[1] See Neb. Rev. Stat. § 28-511(1) (Reissue 2016).

[2] See Neb. Rev. Stat. § 28-518(1) (Reissue 2016). See, also, 2023 Neb. Laws, L.B. 50, § 6.

[3] Compare Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2022), with Neb. Rev. Stat. § 29-2262 (Cum. Supp. 2022).

[4] See § 29-2262(2)(r) and Neb. Rev. Stat. §§ 28-2280 to 28-2282 (Reissue 2016).

## II. BACKGROUND

### 1. Pretrial

Brown was charged by information with a single count of theft by unlawful taking, $5,000 or more, a Class IIA felony. The record shows that approximately 1 month before trial, Brown's trial counsel moved for a 30-day continuance to investigate a list of potential witnesses provided by Brown, which list counsel stated he received from Brown 24 hours beforehand. The court denied the motion to continue trial. Relevant to his appeal, Brown asserts that he attempted to provide his counsel with the list of witnesses months before that hearing.

### 2. Trial Evidence

On January 23, 2022, Brown took two scissor lifts from the Menards-owned distribution center in Valley, Nebraska. Brown had previously worked as a contractor at the distribution center and other Menards locations. At trial, the fact that Brown took the scissor lifts was not disputed. The factual dispute at trial was whether Brown intended to deprive the distribution center of the lifts or whether he borrowed them, intending to return them after he completed a personal construction project.

On January 27, 2022, an investigator in the security department at Menards' corporate office in Wisconsin was informed by the "plant manager" at the distribution center of the missing scissor lifts. The investigator reviewed security surveillance videos from January 23 that showed a man in a white pickup truck, which was towing a trailer, drive up to a guard shack. The man was later identified after the investigator sent still photographs taken from surveillance footage to various general managers at Menards retail stores in Nebraska. One of the general managers recognized Brown's vehicle, and Brown was then identified as the owner.

The guard shack was located at the only entrance to and exit from the distribution center. The guard stationed there

testified that Brown had come "multiple times" before to take the scissor lifts. The guard further testified that when Brown pulled up to the guard shack on January 23, 2022, the guard asked, "Are you here for the scissor lifts today? And he said, Yes. And I told him, You already know where to go. You can go back there and see if they are out of the shop." The guard testified that he believed that he remembered Brown telling him that Brown was there to repair the lifts. Pursuant to the proper procedures, the guard let Brown onto the premises because Brown had a "contractor pass," which did not require the guard to log Brown's presence on the site. Later, when Brown left, the guard saw that the lifts were loaded onto Brown's trailer. Brown testified in his own behalf that the first time he attempted to borrow the lifts, they were broken, and that the second time, he could not find an employee to ask to borrow them.

The videos also showed Brown loading up the two scissor lifts at two separate locations within the distribution center site. At one such location, the videos showed Brown speaking to an employee at the distribution center. The employee testified that Brown said that "he had need of the scissor lift" and that the employee "was enthusiastic" and "gung-ho to show someone else how to start the scissor lift." He walked Brown to the scissor lift, showed Brown where the start button was, and "ma[d]e sure" Brown knew how to drive it, before the employee "closed the door behind [Brown]." The employee's "impression was that there was a contractor that needed some of [Menards'] equipment to use to do a job on site, and with the scissor lift being how it was with, the panel being faded, [he] took it upon [him]self to show [Brown] how to start it." Brown testified in his own behalf that he asked this employee if he could use the two scissor lifts and that the employee gave him permission to take and use them.

Undisputedly, after it was recognized that the lifts were missing from the distribution center, no one contacted Brown

concerning the lifts, even after the investigator learned Brown's identity. Instead, the investigator, based on what he had uncovered, filed a report with the Valley Police Department, which then relayed the information to the Keith County sheriff's office because Brown lived south of Ogallala, Nebraska. The sheriff's office obtained a search warrant and, on February 9, 2022, recovered one of the lifts at a construction site owned by Brown, where Brown was building a carwash. The lift's vehicle identification number was confirmed, and the lift was in full working condition. The lift was first taken to the sheriff's office's impound lot and later returned to the distribution center. The lift was missing for a total of 17 days.

After the first lift was recovered, an arrest warrant was issued for Brown. At that time, Brown was in North Carolina. Upon his return to Nebraska and learning about the warrant, Brown turned himself in. Menards requested the return of the second lift, which Brown arranged. The record indicates that the lift was returned in mid-March 2022.

Through the investigation, the Menards investigator learned that Brown's contracting business had serviced 28 different Menards locations in different states, including the distribution center. The theory of Brown's defense was that consistent with his past practices with Menards, he borrowed the lifts from the distribution center to complete a task on the carwash construction and intended to return the lifts upon the project's completion. While the lifts were in his possession, Brown was waiting for a delivery of materials from Menards, which appeared to have been delayed.

Substantial evidence was adduced by both parties that in practice, contractors were often allowed to use and did use Menards' equipment, even occasionally offsite, without formal permission or documentation. However, Menards' internal corporate policy did not permit contractors to use Menards' equipment. No evidence was adduced that suggested Brown could have been aware of this policy.

At the close of the State's case in chief, the defense moved for a directed verdict, contending that the State had failed to prove that Brown intended to deprive Menards of the two scissor lifts. The court denied the motion, agreeing with the State that because no one was informed that the lifts were being taken offsite and because Brown did not return them before law enforcement's involvement, the jury could reasonably infer that Brown had the requisite intent.

Ultimately, the jury found Brown guilty of theft by unlawful taking of both lifts, in the amount of $16,500, which the jury found in its verdict to be the value of the lifts. At the sentencing hearing, defense counsel indicated that "[i]n talking with [the jurors] afterwards, I understand their thought process and their inability to get over the fact that [Brown] had [the lifts] in his possession, for a couple of months," which was the reason they found Brown guilty.

### 3. Jury Deliberations

After the jury commenced deliberations, the court went back on the record and stated the following:

> During deliberations, while my bailiff brought lunch in, one of the jurors initially told her that they believed Exhibit 1 did not pertain to this case, and they believed that it was a video from something else. I then advised my bailiff to go back in and to have them write on a note that same statement, which they did. I then called both parties and advised them of the issue.
>
> And how we agreed to resolve this together was that my bailiff would go retrieve Exhibit No. 1, and defense, as well as the State, would together view that [video] to ensure it was what they believed it to be, and that was a surveillance video from a Menards in North Platte.
>
> The parties did that, they did review Exhibit 1, and they both agree that Exhibit 1, the DVD, is what it is supposed to be. [And the parties confirmed their agreement on the record.]

. . . .

So[,] after the parties reviewed that and they both acknowledged that Exhibit 1 is what it's supposed to be, the parties then brought up, maybe there was something on the laptop that's in the jury room that might not be part of this case. We all agreed to [bring] the laptop back to the courtroom. This laptop was provided by the Court Administrator. I thought it was a clean laptop.

Upon [re]view, it appears there are some things on there. So[,] we are going to have Mr. Hanson, with the Court Administrator, come up.

Mike Hanson testified that a video, which was likely from a prior jury trial, was saved onto the laptop. In addition, he testified that the computer application Microsoft Paint (Paint) was installed on the laptop. The record suggests that Paint was running when the laptop was retrieved from the jury, and possibly running even earlier. The record does not contain details about what occurred in the jury room other than those below.

After Hanson's testimony, the court stated, "So[,] the Court will note that the laptop provided to the jury is now out with the parties. It is not with [the jury]. Neither side asked for a mistrial, and I also don't think it's appropriate at this juncture." The court informed the parties that it planned to admonish and instruct the jury to disregard "any inadvertent videos" not applicable to Brown's case and "any use of any programming" on the laptop. Both parties agreed to proceed in the manner proposed by the court.

After the jury was brought back into the courtroom, the court stated the following:

[A]s to any videos that you watched that were not from a Menards, because those are the only videos at issue here, you are ordered to not consider those as part of your deliberations, which I doubt you have. But I just wanted to make sure that the 12 of you knew that those were not relevant to this case, and you should not have seen them.

Also, when we viewed the laptop, we noted that there was a program being used, and it appeared to be zooming in maybe on [Brown's] truck. And that is part of this case, as we're all aware, it's a big part that was talked about, but I told you before deliberations that the laptop didn't have any Internet. It also is not supposed to have any programming, because you are only to rely upon the evidence and the exhibits given to you.

So[,] you can only look at those still photos that were marked as exhibits and the surveillance as it's going. You cannot manipulate it or use any programming to enhance anything, because if either party wanted to do that, they could have. So[,] you — Because if the defendant is found guilty or if he's found not guilty, the parties would never have known maybe if you relied on that to reach your verdict, and we need to make sure that the verdict is solely based on the evidence that was offered in this case.

. . . .

With that being said, we are going to allow you to continue with your deliberations, but I do, again, order you not to consider any video that does not apply to this case, and I also order you to not consider any enhancement or any other programming that the jurors used in this case to arrive at your decision.

### 4. Sentencing

Relevant on appeal are the court's sentencing pronouncement, written sentencing order, and order of probation.

The court's sentencing pronouncement was as follows:

The sentence in this case is[:] I am going to remand [Brown] to the custody of the Douglas County Correctional Facility for a term of 90 days. I will give [Brown] credit for [3] days. After that, [Brown] will serve a term of [3] years of probation upon release. During that sentence or

during that probation term, [Brown] will be ordered to pay the amount of $11,164.52 for probation, within the first year of probation. I am assuming that will come out of your settlement. And I am also going to order that you serve [10] hours of community service every month while you're on probation.

The court's sentencing order provided the following:

IT IS THEREFORE ORDERED, ADJUDGED[,] AND DECREED that it is the judgment and sentence of the Court that [Brown] shall serve [90] days with Douglas County Correctional Services with credit for [3] days.

IT IS ALSO ORDERED that [Brown] shall serve [3] years on traditional probation.

The court also entered an order of probation, which "ADJUDGED that [Brown] shall serve 3 years on Traditional Supervision Probation." The probation order reflected two "special conditions": that Brown (1) "pay $11,164.52 in restitution within the first year of probation" and (2) "complete 10 hours of community service during the entirety of probation." (Emphasis omitted.)

After oral argument, we ordered the parties to submit supplemental briefs addressing whether the district court's sentence that Brown serve 90 days in the custody of Douglas County Correctional Services followed by 3 years' probation conforms to law and, if not, whether it constitutes plain error. We have considered these briefs in the resolution of this appeal.

## III. ASSIGNMENTS OF ERROR

Brown assigns, reordered and restated, that (1) the evidence presented at trial was insufficient to support a guilty verdict, (2) the court abused its discretion in ordering monetary restitution without a showing of direct financial loss, and (3) his trial counsel was ineffective to the extent counsel failed to object to the trial court's order of monetary restitution. Brown also assigns that his trial counsel was ineffective by failing

to properly (4) investigate and question the Menards corporate investigator concerning the witness' bias, (5) investigate and contact witnesses identified by Brown, and (6) request a mistrial after it was revealed that the jury was able to view evidence not related to the case and manipulated evidence while in deliberations.

## IV. STANDARD OF REVIEW

[1,2] When reviewing a criminal conviction for sufficiency of the evidence to sustain the conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5] In reviewing a criminal conviction for a sufficiency of the evidence claim, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[6]

[3-5] The rule that a sentence will not be disturbed on appeal absent an abuse of discretion is applied to the restitution portion of a criminal sentence just as it is to any other part of the sentence; sentences within statutory limits will be disturbed by an appellate court only if the sentence complained of was an abuse of judicial discretion.[7] A sentence that is contrary to the court's statutory authority is an appropriate

---

[5] *State v. Allen*, 314 Neb. 663, 992 N.W.2d 712 (2023), *modified on denial of rehearing* 315 Neb. 255, 995 N.W.2d 446, and *cert. denied* ___ U.S. ___, 144 S. Ct. 1070, 218 L. Ed. 2d 248 (2024). See, *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999); *State v. Pierce*, 248 Neb. 536, 537 N.W.2d 323 (1995); *State v. Huffman*, 214 Neb. 429, 334 N.W.2d 3 (1983).

[6] See *State v. Clark*, 315 Neb. 736, 1 N.W.3d 487 (2024). See, also, *Clark v. State*, 151 Neb. 348, 37 N.W.2d 601 (1949); *Palmer v. The People*, 4 Neb. 68 (1875).

[7] *State v. Street*, 306 Neb. 380, 945 N.W.2d 450 (2020).

matter for plain error review.[8] Whether a sentence is authorized by statute presents a question of law, which we review de novo.[9]

[6] When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense.[10]

## V. ANALYSIS

### 1. Sufficiency of Evidence

Brown was convicted of theft by unlawful taking, which is committed when a person "takes, or exercises control over, movable property of another with the intent to deprive him or her thereof."[11] On appeal, Brown argues that the evidence was insufficient to prove the essential element of the offense that he had the requisite "intent to deprive" contemplated in § 28-511(1). Under Neb. Rev. Stat. § 28-509(1) (Reissue 2016):

Deprive shall mean:

(a) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value, or with intent to restore only upon payment of reward or other compensation; or

(b) To dispose of the property of another so as to create a substantial risk that the owner will not recover it in the condition it was when the actor obtained it.

---

[8] *State v. Roth*, 311 Neb. 1007, 977 N.W.2d 221 (2022). See, e.g., *State v. Street, supra* note 7; *State v. Esch*, 290 Neb. 88, 858 N.W.2d 219 (2015); *State v. Campbell*, 247 Neb. 517, 527 N.W.2d 868 (1995); *State v. Kelly*, 235 Neb. 997, 458 N.W.2d 255 (1990). See, also, e.g., *U.S. v. Geddes*, 71 F.4th 1206 (10th Cir. 2023); *U.S. v. Penn*, 969 F.3d 450 (5th Cir. 2020); *U.S. v. Lachowski*, 405 F.3d 696 (8th Cir. 2005).

[9] *State v. Starks*, 308 Neb. 527, 955 N.W.2d 313 (2021).

[10] *State v. Esch*, 315 Neb. 482, 997 N.W.2d 569 (2023). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[11] § 28-511(1). See *State v. Miner*, 273 Neb. 837, 733 N.W.2d 891 (2007).

At trial, the State's theory of the case and argument to the jury relied on the first clause of § 28-509(1)(a), that Brown intended to withhold the scissor lifts permanently.

Brown contends that no evidence was adduced that supports the State's position that the amount of time the lifts were in Brown's possession showed he intended to withhold the lifts permanently. In support, Brown points out the lack of damage to the lifts while they were in his possession and the fact that the lifts were returned in the same condition, the common practice of contractors' borrowing equipment from Menards and Brown's past history of doing so, and that he did not attempt to "obliterate" the lifts' vehicle identification numbers, hide the lifts from the public, or sell the lifts to any other individual.[12]

Conversely, the State identifies evidence that showed the lifts were not returned until after Menards' investigation concluded and criminal charges were filed, as well as the absence of evidence that Brown would have otherwise returned the lifts. In addition, the State notes that no one at the distribution center knew Brown or how to contact him and that the manner in which Brown took the lifts off the property suggests his intent to deprive.

[7,8] A defendant's intent is a question of fact[13] that may be inferred from the circumstances surrounding the act.[14] A fact may be proved by direct evidence alone, by circumstantial

---

[12] Brief for appellant at 21.

[13] *Acklie v. Nebraska Dept. of Rev.*, 313 Neb. 28, 982 N.W.2d 228 (2022); *State v. Ayres*, 236 Neb. 824, 464 N.W.2d 316 (1991). See, *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012); *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992).

[14] See, *State v. Stanko*, 304 Neb. 675, 936 N.W.2d 353 (2019); *State v. Almasaudi*, 282 Neb. 162, 802 N.W.2d 110 (2011). See, also, *State v. Mills*, 199 Neb. 295, 258 N.W.2d 628 (1977); *State v. Jungclaus*, 176 Neb. 641, 126 N.W.2d 858 (1964); *State v. Brown*, 174 Neb. 393, 118 N.W.2d 332 (1962); *Young v. State*, 127 Neb. 719, 256 N.W. 908 (1934).

evidence alone, or by a combination of the two.[15] Here, the jury was instructed in accordance with NJI2d Crim. 5.1, that "[i]n deciding whether [Brown] acted with intent [the jury] should consider his words and acts and all the surrounding circumstances."

Significant evidence of the circumstances surrounding Brown's taking of the lifts was adduced at trial. For example, as the State argued at trial, when Brown took the lifts, he did not obtain any formal permission to do so, nor did he ensure that the distribution center knew how to contact him. On the other hand, as Brown argued at trial and maintains on appeal, there was also evidence presented that Brown lacked the requisite intent to deprive the distribution center of the lifts, and these issues were a result of Brown's carelessness, absent-mindedness, or poor judgment. But his intent in taking the lifts was a question of fact for the jury to decide.

An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[16] The jury was made aware of all the circumstances surrounding Brown's taking of the lifts, and from those circumstances, it inferred his intent. When viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Brown had the essential intent to deprive the distribution center of the lifts beyond a reasonable doubt.[17] Hence, sufficient evidence was adduced at trial to sustain Brown's conviction.

## 2. Sentencing

Brown next argues that the court's restitution order is not supported by evidence in the record and that the order was

---

[15] *State v. Buol*, 314 Neb. 976, 994 N.W.2d 98 (2023); NJI2d Crim. 5.1.

[16] See *State v. Clark, supra* note 6. See, also, *Clark v. State, supra* note 6; *Palmer v. The People, supra* note 6.

[17] See *State v. Allen, supra* note 5. See, *State v. Myers, supra* note 5; *State v. Pierce, supra* note 5; *State v. Huffman, supra* note 5.

made without statutory authority.[18] In addition, Brown assigns that his trial counsel provided ineffective assistance to the extent that his trial counsel failed to object to the ordered restitution.[19]

[9] However, we need not consider these assignments because we notice plain error in the district court's sentencing. Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[20] A sentence that is contrary to the court's statutory authority is an appropriate matter for plain error review.[21]

The Legislature has provided that when sentencing a convicted offender for a felony other than a Class III, IIIA, or IV felony, "the court shall fix the minimum and the maximum terms of the sentence to be served within the limits provided by law."[22] "The minimum term fixed by the court shall be any term of years less than the maximum term imposed by the court [or the] minimum limit provided by law."[23] This

---

[18] See §§ 29-2281 and 29-2282 and Neb. Rev. Stat. § 29-2287 (Reissue 2016). See, also, *State v. Street, supra* note 7; *State v. Ramirez*, 285 Neb. 203, 825 N.W.2d 801 (2013); *State v. Holecek*, 260 Neb. 976, 621 N.W.2d 100 (2000); *State v. McLain*, 238 Neb. 225, 469 N.W.2d 539 (1991); *State v. Cabrera-Lomeli*, No. A-01-059, 2002 WL 171322 (Neb. App. Feb. 5, 2002) (not designated for permanent publication). Cf. *Hester v. U.S.*, ___ U.S. ___, 139 S. Ct. 509, 202 L. Ed. 2d 627 (2019).

[19] But cf., *State v. Roth, supra* note 8; *State v. Street, supra* note 7; *State v. Esch, supra* note 8; *State v. Campbell, supra* note 8; *State v. Kelly, supra* note 8.

[20] *Castillo v. Libert Land Holdings 4*, 316 Neb. 287, 4 N.W.3d 377 (2024); *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023).

[21] *State v. Roth, supra* note 8. See, e.g., *State v. Street, supra* note 7; *State v. Esch, supra* note 8; *State v. Campbell, supra* note 8; *State v. Kelly, supra* note 8. See, also, e.g., *U.S. v. Geddes, supra* note 8; *U.S. v. Penn, supra* note 8; *U.S. v. Lachowski, supra* note 8.

[22] Neb. Rev. Stat. § 29-2204(1) (Reissue 2016).

[23] *Id*. See, e.g., *State v. Starks, supra* note 9; *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018).

language obligates a district court to impose indeterminate sentences for such convictions.[24] A sentencing court articulates an indeterminate sentence by setting forth a minimum and maximum term or a range of time for which a defendant is to be incarcerated, whereas a determinate sentence is a single term of years.[25] Furthermore, indeterminate sentences are not subject to post-release supervision.[26]

On the other hand, in sentencing an offender to probation, "[t]he court may, as a condition of a sentence of probation, require the offender . . . [t]o be confined periodically in the county jail . . . ."[27] We have recognized that this statute authorizes a sentencing court to order "a predetermined, periodic service of a definite term of jail time" as a condition of probation.[28] When such jail time is imposed as a condition of probation, "the court shall advise the offender on the record the time the offender will serve in jail," assuming no good time is lost and no jail time is waived.[29] Furthermore:

Jail time may only be imposed as a condition of probation . . . if:

(a) The court would otherwise sentence the defendant to a term of imprisonment instead of probation; and

(b) The court makes a finding on the record that, while probation is appropriate, periodic confinement in the county jail as a condition of probation is necessary because a sentence of probation without a period of confinement would depreciate the seriousness of the offender's crime or promote disrespect for law.[30]

---

[24] See, e.g., *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

[25] See, e.g., *id.*

[26] See § 28-105.

[27] § 29-2262(2).

[28] *State v. Kantaras*, 294 Neb. 960, 970, 885 N.W.2d 558, 566 (2016). See *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d 173 (1992).

[29] § 29-2262(3). See Neb. Rev. Stat. § 47-503(2) (Reissue 2021).

[30] § 29-2262(4).

[10] We have long recognized that imprisonment and probation are mutually exclusive sentencing alternatives, and the Legislature has not authorized combining a sentence of imprisonment and a sentence of probation within the same sentence.[31] At least it has not done so for a Class IIA felony such as the one Brown was convicted.

In reviewing the court's pronouncement and its written sentencing order considering these statutory requirements and our case law, we notice plain error. Although the record reflects that the district court sought to craft an appropriate sentence, the sentence imposed did not meet the requirements of either an indeterminate sentence of imprisonment or a sentence of probation. The sentence imposed is a determinate sentence of 90 days in county jail followed by a term of 3 years' probation, which is not statutorily authorized for Brown's conviction of a Class IIA felony.[32] In essence, the sentence operates as a determinate sentence followed by a period of post-release supervision, but such a sentence is authorized for only Class III, IIIA, or IV felonies, not Class IIA felonies.[33]

Therefore, we vacate Brown's sentence and remand the cause for resentencing.[34] In light of this disposition, because the restitution order was a part of Brown's sentence,[35] we need not address Brown's assignments of error pertaining to the restitution order on appeal.

---

[31] See, *State v. Kantaras, supra* note 28; *State v. Nuss*, 190 Neb. 755, 212 N.W.2d 565 (1973).

[32] See, also, *State v. Starks, supra* note 9; *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020); *State v. Thompson, supra* note 23; *State v. Vanness*, 300 Neb. 159, 912 N.W.2d 736 (2018).

[33] See Neb. Rev. Stat. § 29-2204.02 (Reissue 2016). See, also, *State v. Fernando*, 32 Neb. App. 289, 996 N.W.2d 630 (2023); *State v. Wells*, 28 Neb. App. 118, 940 N.W.2d 847 (2020).

[34] See *State v. Kantaras, supra* note 28. See, also, *State v. Roth, supra* note 8.

[35] See, e.g., *State v. Street, supra* note 7; *State v. Duran*, 224 Neb. 774, 401 N.W.2d 482 (1987). See, also, *State v. Clapper*, 273 Neb. 750, 732 N.W.2d 657 (2007).

### 3. Ineffective Assistance of Counsel

[11,12] As mentioned above, when reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense.[36] An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law.[37] An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.[38]

In reviewing an ineffective assistance of counsel claim on direct appeal, a court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either.[39] To show deficient performance, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[40] To show prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[41] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[42] Ultimately, the

---

[36] *State v. Esch, supra* note 10. See, also, *Strickland v. Washington, supra* note 10.

[37] *State v. Esch, supra* note 10.

[38] *Id.*

[39] See *id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

Constitution guarantees criminal defendants only a fair trial and a competent attorney.[43]

### (a) Impeach Lead Witness' Bias

Brown assigns that his trial counsel was ineffective in failing to impeach the State's lead witness. Brown asserts on appeal that Menards filed a civil suit against him at some point before trial and that the Menards corporate investigator would be a witness against Brown in the civil suit. Although the record suggests a settlement in Brown's favor was reached before sentencing, the details of that suit are not in the appellate record. Brown contends that his trial counsel's failure to question the investigator regarding any bias the investigator may have had constituted ineffective assistance.

First, the State argues that Brown's assignment is twofold and that he assigns his counsel was ineffective in failing to properly (1) investigate the lead witness and (2) question the lead witness. Applying its bifurcated reading, the State contends that merely assigning trial counsel's failure to "properly investigate . . . the lead witness"[44] is insufficiently specific. Assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity.[45]

We reject the State's bifurcated reading of Brown's assignment of error. Reading the assignment, and without needing to scour Brown's brief, his use of the term "investigate" is directly connected to his counsel's failure to "question" the witness' bias at trial. All the more, Brown precisely assigned that his counsel's failure to "properly investigate and question the lead witness" pertained to the witness' bias related to "a civil lawsuit filed by Menards against [Brown]," which,

---

[43] *Id.* See *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982).

[44] Brief for appellee at 25.

[45] *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019).

notably, resulted in a settlement payment *to Brown*. The assignment of error is sufficiently specific.[46]

[13] The State also argues that the record refutes any bias against Brown by the lead witness. It asserts that because the civil suit was not filed until after the lead witness' investigation of the theft, he could not have been biased against Brown. However, witnesses' bias affects the reliability of their testimony *at trial*.[47] At the time of trial, the civil suit was at issue and could have influenced the lead witness' testimony. Accordingly, we find no merit in the State's argument.

However, as the State concedes, the extent of any potential bias of the lead witness is unclear because the particular details surrounding the civil suit are not in the record. Thus, the record is insufficient to consider this claim of ineffective assistance of counsel on direct appeal.

### (b) Other Defense Witnesses

Brown also assigns that his counsel was ineffective for failing to properly investigate and contact other potential witnesses identified by Brown. As the State acknowledges, the record is insufficient to review this claim on direct appeal.

### (c) Request Mistrial Due to Jury Misconduct

Brown assigns that his trial counsel was ineffective in failing to move for a mistrial after it was revealed that the jury viewed evidence unrelated to his case and used the computer application Paint to manipulate the evidence adduced. To the

---

[46] See, *State v. Miranda*, 313 Neb. 358, 362, 984 N.W.2d 261, 268 (2023) (concluding "'failing to meaningfully participate in voir dire'" sufficient, whereas "'failing to zealously advocate'" insufficient); *State v. Wood*, 310 Neb. 391, 414, 966 N.W.2d 825, 846 (2021) (concluding "'Failing to Investigate the Case Fully'" insufficient); *State v. Mrza, supra* note 45, 302 Neb. at 935, 926 N.W.2d at 86 (concluding failing to "'adequately investigate [defendant's] defenses and effectively cross-examine witnesses'" insufficient).

[47] Cf. Neb. Rev. Stat. § 27-408 (Reissue 2016).

extent that this assignment is reviewable on the appellate record, it is without merit.

[14-16] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[48] Decisions regarding motions for mistrial are directed to the discretion of the trial court.[49] When attempting to prove error predicated on the failure to grant a mistrial, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[50] Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.[51]

[17-19] When an allegation of jury misconduct is made and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred.[52] If it occurred, the trial court must then determine whether it was prejudicial to the extent that the defendant was denied a fair trial.[53] If the trial court determines that the misconduct did not occur or that it was not prejudicial, adequate findings are to be made so that the determination may be reviewed.[54]

[48] *State v. Esch, supra* note 10.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017); *State v. Anderson*, 252 Neb. 675, 564 N.W.2d 581 (1997); *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978).

[53] *Id.*

[54] *Id.*

As a threshold issue, we note that the record is not fully developed as to the extent and scope of the jury's conduct. However, insofar as the jury merely magnified an admitted image of Brown's truck, we find no merit to Brown's contention that his trial counsel was ineffective for failing to move for a mistrial.

[20,21] A jury commits serious misconduct when it considers extraneous prejudicial information, which means information existing or originating outside or beyond the evidence presented at trial.[55] However, when a jury merely makes a more critical examination of an exhibit that had been admitted into evidence, without alteration or manipulation, a jury does not commit serious misconduct.[56]

The record indicates that the jury used Paint to magnify an image of Brown's truck that had been admitted into evidence. But nothing in the record suggests the jury altered, manipulated, or augmented the fixed content of the surveillance video in any manner that would constitute serious misconduct and amount to the creation of evidence extraneous to what had been received into evidence.[57] While we do not endorse the use of computer programs by juries to conduct their own forensic analysis of the evidence in jury deliberations or deem it proper, the record here does not suggest that the jury engaged in serious misconduct.

In addition, although Brown's trial counsel did not move for a mistrial, the district court expressly considered whether a mistrial was appropriate. In its discretion, it did not think that it was. Nothing in the record suggests the court abused its discretion in reaching its conclusion.

Moreover, the court admonished and instructed the jurors to disregard their use of Paint and the irrelevant video exhibit from another case. It is presumed that a jury followed the

---

[55] See *State v. Hairston, supra* note 52.

[56] *Id.*

[57] See *id.*

instructions given in arriving at its verdict, and unless it affirm-atively appears to the contrary, it cannot be said that such instructions were disregarded.[58]

Because the record is devoid of any showing to the contrary, we find no merit to Brown's assignment that his trial counsel was ineffective in failing to move for a mistrial.

## VI. CONCLUSION

We affirm Brown's conviction of theft by unlawful taking. However, we notice plain error in his sentence. Hence, we vacate his sentence and remand the cause for resentencing.

Conviction affirmed, sentence vacated,
and cause remanded for resentencing.

---

[58] *State v. Esch, supra* note 10.