IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. FALCON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

SHAQUILLE M. FALCON, APPELLANT.

Filed November 5, 2024.    No. A-23-824.

Appeal from the District Court for Lancaster County: JOHN A. COLBORN, Judge. Affirmed.

Robert Wm. Chapin, Jr., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## INTRODUCTION

Shaquille M. Falcon appeals from his conviction in the district court for Lancaster County of second degree assault. On appeal, he assigns errors related to the failure to give a lesser-included offense jury instruction, the sufficiency of the evidence to support his conviction, and the sentence imposed by the court. For the reasons contained herein, we affirm.

## STATEMENT OF FACTS

On January 11, 2023, Falcon was charged by information with second degree assault, a Class IIA felony in violation of Neb. Rev. Stat. § 28-309 (Reissue 2016). The information alleged that Falcon unlawfully struck or wounded Terrance L. Gilmer while Falcon was legally confined in a jail or an adult correctional or penal institution, or while otherwise in legal custody of the Department of Correctional Services.

- 1 -

A jury trial was held on June 12 and 13, 2023. Four witnesses, including Falcon, testified and three exhibits were entered into evidence.

Jason Swedlund testified that he is a correctional officer at the Lancaster County Adult Detention Facility (the facility). Swedlund described each housing unit in the facility as having a common area called a "day room" which is surrounded by cells. Some housing units also have a control center in the day room that contains a desk where a correctional officer can monitor the housing unit from various video feeds. Cells have either one or two inmates assigned depending on the housing unit. Cell doors are locked and can only be opened manually by facility staff via a touch screen in the command center.

Swedlund testified that when inmates first enter the facility, they are provided an inmate handbook which lists all of the facility's rules and regulations. Inmates also sign a form indicating that they received the handbook. Rules contained in the inmate handbook include that inmates are not allowed in cells that are not assigned to them and are not allowed physical contact of any kind. If inmates do not follow the facility's rules, they are subject to various forms of internal discipline including counseling, additional time in their cells, or being removed to a disciplinary segregation area with higher security. These forms of internal discipline are separate from a potential criminal charge. Swedlund testified that it is not uncommon for inmates to avoid disclosing conflicts or disputes between other inmates in order to avoid sanctions.

On October 12, 2022, at approximately 9 p.m., Swedlund was working on the first floor of the facility in "S pod," or the disciplinary and segregation unit, where Falcon was assigned. Inmates in the S pod are assigned to individual cells and are released from their cells systematically by correction officers to allow for periodic time out of their cells. Officers typically release three to four cells at a time from the control center at the center of the S pod.

A video of the incident involving Falcon, which does not contain sound, was received into evidence as exhibit 17. Swedlund testified that there are no cameras in the S pod cells and that the only video of the incident was captured from a camera across from the day room. The video shows a line of cells on a top and bottom floor across from the day room. Each cell has a solid door and a rectangular glass window in the center of the door. The day room contains several tables with attached seats and a shower area. Swedlund testified that at the time, Falcon was assigned to cell 13, on the far right of the top floor of cells, and Gilmer was assigned to cell 19, on the far left of the top floor of cells. An inmate named Scotty Parker was assigned to cell 18, directly to the right of Gilmer's.

As the video starts, Falcon is out of his cell and is climbing the stairs from the day room to the top floor of cells. Falcon approaches cell 19 and makes contact with Gilmer through the cell's window. Falcon then pulls on the door of cell 19. Falcon testified that he pulled on the door to Gilmer's cell because he was trying to open the door to allow Gilmer some extra time outside of his cell. Falcon testified that he and Gilmer then spoke through Gilmer's cell window about basketball, indicating they could "slam each other," and were laughing and joking together. Falcon denied that he was trying to intimidate or threaten Gilmer. The video shows that Falcon stood outside of Gilmer's cell and spoke to him through the cell's window for approximately 90 seconds before the door to the cell opened.

Swedlund explained that when an inmate's allotted time out of his cell is over, a correctional officer will open his respective cell from the control center to let the inmate in and

then lock him back in his cell. Once the three or four inmates who had been out are back in their individual cells, the next group is released. From the control center, Swedlund mistakenly believed that it was Parker waiting to be let back into cell 18 at the end of Parker's allotted time outside, when in reality it was Falcon speaking to Gilmer outside of cell 19. Swedlund meant to open Parker's cell 18 from the keypad in the control center to allow Parker back into his cell but accidentally opened cell 19, belonging to Gilmer.

Falcon testified that he heard a noise and noticed that Gilmer's cell door had "popped open." Falcon then entered Gilmer's cell and the two began "playing around." On the video Falcon and Gilmer can be seen inside cell 19 through the window to Gilmer's cell. The two men weave in and out of the window's frame in an apparent struggle and the men appear to briefly raise their fists. However, the video does not capture any direct blows or strikes through the cell window. Other inmates in the day room react to the incident in cell 19 by trying to see inside the cell window and by trying to get the attention of Falcon and Gilmer.

Swedlund testified that from the control center he realized the Falcon had entered cell 19 and observed him "going in with closed fists and swinging . . ." Swedlund believed that a fight was happening in cell 19 and called for staff assistance.

The video shows Falcon inside cell 19 for less than 20 seconds. The video captures Falcon shaking hands with Gilmer as he exits his cell.

At trial, Falcon agreed that he and Gilmer grabbed each other but testified that they were merely engaged in horseplay. He did not believe that the officer in the control center was going to "call a code." Falcon testified that the handshake between the two men shows that they had only been playing around and that Falcon told Gilmer he hoped the two of them would not get in trouble.

On cross examination, Falcon conceded that he had broken the rules contained in the facility's inmate handbook by going into Gilmer's cell and having physical contact with him. Falcon also acknowledged that someone could be hurt by "slamming" or wrestling another but disagreed that wrestling would include a strike. Falcon believed there was a distinction between fighting, which would include striking, and wrestling. Falcon denied that he had been injured in his interaction with Gilmer.

Kevin Sladek, a Lincoln Police Department officer, testified that on October 12, 2022, at approximately 10 p.m. he responded to a call for service at the facility regarding a fight between two inmates. Upon arriving at the facility, Sladek and an accompanying recruit officer made contact with Falcon and Gilmer in the booking area. Sladek also watched security camera footage of the incident, which he identified as exhibit 17.

Neither Falcon nor Gilmer were cooperative with Sladek's questioning, but Gilmer allowed the recruit officer to photograph him. The photographs of Gilmer were entered into evidence. Sladek did not note any injuries on Gilmer and no injuries can be seen in the photographs. Falcon refused to be photographed but Sladek observed Falcon to have scratches to his face and a popped blood vessel in his eye. Two still images of Falcon taken from the recruit officer's body camera were entered into evidence. Sladek noted he was not able to see the injuries in the photographs of Falcon that he had observed in person on the evening of October 12 because the photographs were grainy and the lighting in the booking area was poor.

Charles Jones, a sergeant with the facility, testified that on October 12, 2022, he had responded to a radio call for a disturbance in the S pod. By the time Jones arrived, the disturbance

was over, and he and other correctional officers were attempting to "figure out what had gone on." Jones had a few minutes of contact with Falcon, who was sitting at a table in the day room. Jones did not observe Falcon to have any injuries.

Following Gilmer's contact with the Lincoln Police Department, Jones testified that Gilmer was returned to his cell around 9:30 or 10 p.m. where he stayed for the rest of the night. In the early hours of the next morning, Jones received a call from the control center that Gilmer was requesting medical assistance. Jones met Gilmer at his cell at roughly 3:30 a.m. on October 13 and Gilmer complained of a headache and having trouble sleeping. Jones did not observe any obvious injuries on Gilmer. Gilmer was later transferred to the infirmary after his contact with Jones.

The case was submitted to the jury in the morning of June 13, 2023. No lesser-included offense instruction for third degree assault was requested or otherwise provided to the jury. Roughly 3 hours later, the jury submitted a question, though that question does not appear in our record on appeal. The district court responded, "You have been fully instructed in the law and should refer to the jury instructions given to you." On June 14 the jury unanimously found Falcon guilty of one count of second degree assault.

The district court accepted the jury's verdict and found Falcon guilty.

A sentencing hearing was held on September 25, 2023. The district court sentenced Falcon to a term of 4 to 8 years' imprisonment with 299 days credit for time served.

Falcon appeals.

## ASSIGNMENTS OF ERROR

Falcon assigns, reordered and combined, that (1) his trial counsel was ineffective in failing to request an instruction on third degree assault as a lesser-included offense and the district court erred in not giving the instruction; (2) the evidence was insufficient to sustain his conviction for second degree assault; and (3) the court abused its discretion by imposing an excessive sentence.

## ANALYSIS

### JURY INSTRUCTIONS

Falcon assigns both that his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of third degree assault and that the district court erred by failing to instruct the jury that third degree assault was a lesser-included offense of second degree assault. Falcon argues that the record is void of any direct evidence that indicates Falcon struck or wounded Gilmer. He asserts that in having an instruction on third degree assault, the jury could have arrived "at a less drastic alternative." Brief for appellant at 11.

Whether jury instructions given by a trial court are correct is a question of law. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Id*.

Section 28-309(1) provides that a person commits the offense of second degree assault if he or she:

(a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument;

(b) Recklessly causes serious bodily injury to another person with a dangerous instrument; or

(c) Unlawfully strikes or wounds another while legally confined in a jail or an adult correctional or penal institution. . .

In the case at hand, Falcon was charged under subsection (c).

Neb. Rev. Stat. § 28-310 (Reissue 2016) states that a person commits the offense of assault in the third degree if he intentionally, knowingly, or recklessly causes bodily injury to another person or threatens another in a menacing manner. In contrast to second degree assault under subsection (a) or (b), third degree assault does not require use of a dangerous instrument.

As a general rule, whether requested to do so or not, a trial court has the duty to instruct the jury on issues presented by the pleadings and the evidence. See *State v. Kipple*, 310 Neb. 654, 968 N.W.2d 613 (2022). A court must instruct on a lesser-included offense if (1) the elements of the lesser offense for which an instruction is requested are such that one cannot commit the greater offense without simultaneously committing the lesser offense and (2) the evidence produces a rational basis for acquitting the defendant of the greater offense and convicting the defendant of the lesser offense. *State v. Stabler*, 305 Neb. 415, 940 N.W.2d 572 (2020).

In *Stabler*, the defendant was convicted of second degree assault and use of a deadly weapon to commit a felony (a knife). The defendant assigned as error the trial court's failure to instruct the jury on the lesser-included offense of third degree assault. The Nebraska Supreme Court first recognized that third degree assault is a lesser-included offense of second degree assault. The Court found that a person commits the offense of second degree assault by committing the offense of third degree assault of causing, intentionally, knowingly, or recklessly, bodily injury to another by use of a dangerous instrument. Citing *State v. Al-Zubaidy*, 263 Neb. 595, 641 N.W.2d 362 (2002), the Court noted:

> Where the prosecution has offered uncontroverted evidence on an element necessary for conviction of the greater crime but not necessary for the lesser offense, a duty rests on the defendant to offer at least some evidence to dispute this issue if he or she wishes to have the benefit of a lesser-offense instruction.

305 Neb. at 414-415. Because Stabler did not offer evidence to dispute the uncontroverted evidence that a knife was used in connection with the assault, the Supreme Court concluded that the evidence did not support giving the lesser-included offense instruction.

In *State v. McKay*, 15 Neb. App. 169, 723 N.W.2d 644 (2006), the defendant appealed from his conviction of assault by a confined person. He assigned as error the failure to give a jury instruction on the lesser-included offense of third degree assault. This court first noted that the first part of the test was satisfied in that the elements of assault by a confined person, the greater offense, and third degree assault, the lesser offense, are such that it is impossible to commit the greater offense without at the same time having committed the lesser offense. Neb. Rev. Stat. 28-932 (Cum. Supp. 2004) provided that:

> (1) Any person (a)(i) who is legally confined in a jail or an adult correctional or penal institution, (ii) who is otherwise in legal custody of the Department of Correctional Services . . . and (b) who intentionally, knowingly, or recklessly causes bodily injury to another person shall be guilty of a Class IIIA felony, except that if a deadly or dangerous weapon is used to commit such assault, he or she shall be guilty of a Class IIA felony.

We noted in *McKay* that the elements of Neb. Rev. Stat. § 28-310 and § 28-932(1) were identical, except that assault by a confined person has the additional requirement that the defendant be "legally confined." We concluded that because there was no rational basis for the jury to conclude that McKay was not legally confined at the time of the assault, there was thus no rational basis for acquitting McKay of the greater offense, and he was not entitled to the lesser-included offense instruction.

In the case at hand, Falcon was charged only under § 28-309(1)(c), which elements include the unlawful striking or wounding of another while legally confined in a jail or an adult correctional or penal institution. If the evidence supports the wounding of another under this statute, then third degree assault would arguably be a lesser-included offense in that intentionally or negligently causing bodily injury, or recklessly causing serious bodily injury could amount to wounding. However, because § 28-309(1)(c) also includes the additional element of confinement, and the evidence clearly shows that Falcon was confined at the time of the offense, there was no rational basis for acquitting him of the greater offense and finding him guilty of the lesser offense.

Further, 28-309(1)(c) alternatively prohibits striking another (does not require wounding) and in that event, the elements of the offense are not similar and are such that a lesser-included offense would not be warranted.

Falcon testified that he had only been engaged in horseplay with Gilmer and that, though the two had wrestled in Gilmer's cell, Falcon had not struck, wounded, or otherwise injured Gilmer. Falcon also denied threatening Gilmer through his cell door. Although as we note below, the circumstantial evidence supports a finding that Falcon struck Gilmer, there was no evidence to show that Gilmer was wounded or suffered bodily injury or serious bodily injury. Falcon's testimony and theory of the case did not support instructing the jury on the lesser-included offense of third degree assault. See § 28-310.

We find the district court did not err in failing to instruct the jury on the lesser-included offense of third degree assault. This assignment of error fails.

Falcon also argues that his trial counsel was ineffective in failing to request an instruction on third degree assault as a lesser-included offense of second degree assault.

When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense. *State v. Brown*, 317 Neb. 273, 9 N.W.3d 871 (2024). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law. See *State v. Brown, supra*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*.

In reviewing an ineffective assistance of counsel claim on direct appeal, a court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either. *Id*. To show deficient performance, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id*. To show prejudice, the defendant must demonstrate a reasonable probability that, but for

counsel's deficient performance, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*.

As we found above, Falcon's testimony did not support an instruction on third degree assault. As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument. *State v. Collins*, 299 Neb. 160, 907 N.W.2d 721 (2018). Because the evidence did not support an instruction on third degree assault, trial counsel cannot be deficient for failing to request the instruction. This assignment of error also fails.

## SUFFICIENCY OF EVIDENCE

Falcon next assigns that the district court "erred by finding sufficient evidence to form a factual basis as said finding is solely based on conjecture." Brief for appellant at 12. Like the State, we interpret this assignment of error as challenging the sufficiency of the evidence for Falcon's conviction of second degree assault. Falcon argues that no evidence was offered at trial that proved he "struck" or "wounded" Gilmer as no witnesses saw Falcon physically strike Gilmer and witnesses testified that they did not observe any injuries to Gilmer following the incident.

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022). There are two kinds of evidence, direct and circumstantial. Direct evidence directly proves the fact in dispute without inference or presumption. Circumstantial evidence is evidence of one or more facts from which the existence of the fact in dispute may logically be inferred. *State v. Dap*, 315 Neb. 466, 997 N.W.2d 363 (2023). Circumstantial evidence is not inherently less probative than direct evidence, and a fact proved by circumstantial evidence is nonetheless a proven fact. *Id*.

As noted above, § 28-309(1)(c) states that a person commits the offense of assault in the second degree if he or she unlawfully strikes or wounds another while legally confined in a jail or an adult correctional or penal institution. Swedlund testified that he saw Falcon enter Gilmer's cell from the control center and observed him swinging with closed fists. The video shows a struggle between Falcon and Gilmer through the window of Gilmer's cell with both men weaving and raising their fists during the 20 seconds Falcon is inside the cell.

Viewing this evidence in the light most favorable to the State, a rational trier of fact could find that Falcon unlawfully struck Gilmer. The district court did not err in accepting the jury's guilty verdict.

## EXCESSIVE SENTENCE

Falcon finally assigns that the district court abused its discretion when it imposed an excessive sentence.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Alkazahy*, 314 Neb. 406, 990 N.W.2d 740 (2023). An abuse

of discretion takes place when the sentencing court's reasons or rulings are clearly untenable and unfairly deprive a litigant of a substantial right and a just result. *Id.*

In determining a sentence to be imposed, relevant factors customarily considered and applied are the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.* See, also, *State v. Rogers*, 297 Neb. 265, 899 N.W.2d 626 (2017) (sentencing court is accorded very wide discretion in imposing sentence).

Falcon was convicted of one count of second degree assault, a Class IIA felony. A Class IIA felony is punishable by up to 20 years' imprisonment with no minimum. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022). Falcon's sentence of 4 to 8 years' imprisonment is within the statutory limits.

Falcon nevertheless claims that the district court abused its discretion, arguing that he is relatively young, and that the incident only involved two individuals engaged in horseplay. Falcon asserts that the incident did not result in any injuries and because "[t]here was little if any violence shown in the record," internal discipline rather than a term of imprisonment would have been more appropriate. Brief for appellant at 15.

The presentence investigation report (PSR) shows that Falcon was 30 years old at the time the report was prepared, he was single with one dependent, he had received his GED, and he has been unemployed since 2021. His criminal history includes convictions for an attempted robbery, for which he was sentenced to a term of 5 to 6 years' imprisonment; first degree assault, for which he was sentenced to a term of 5 to 7 years' imprisonment; and use of a weapon to commit a felony, for which he was sentenced to a term of 5 years' imprisonment. The PSR also indicates that Falcon had pending charges of attempted enticement by electronic communication device for alleged sexual communications with a teenager; possession of a firearm by a prohibited person; and driving under the influence (first offense). On the Level of Service/Case Management Inventory, Falcon scored in the overall very high risk to reoffend category.

The PSR also indicates that less than 2 months after the incident at issue, Falcon was involved in a subsequent altercation with another inmate inside a cell at the Lancaster County Jail. This incident was likewise captured by video through a cell's glass window and apparently shows Falcon and the other inmate "swinging their arms at each other engaging in a fight with each other." Neither Falcon nor the other inmate reported the altercation, but jail staff observed that the other inmate had redness, slight bruising, and minor swelling under his left eye.

At the sentencing hearing, the district court indicated that it had reviewed the PSR. The court observed that Falcon had participated in the second altercation after he had been charged with the first one at issue in this case. The court also noted Falcon's "very violent criminal history . . ." The court indicated that it had considered the nature and circumstances of the crime as well as the history and character and condition of Falcon. The court found that imprisonment of Falcon was necessary for the protection of the public, because the risk was substantial that during any

period of probation Falcon would engage in additional criminal conduct, and because a lesser sentence would depreciate the seriousness of Falcon's crimes and promote disrespect for the law.

We find no abuse of discretion by the district court in the sentence imposed.

CONCLUSION

For the reasons stated herein, we affirm the conviction and the sentence imposed by the district court.

AFFIRMED.